**In re NANTUCKET, INC.**

**Appeal No. 81–567.**

United States Court of Customs and Patent Appeals.

May 6, 1982.

J. Timothy Hobbs, B. Parker Livingston, Jr., and Paul F. Kilmer, Washington, D. C., for appellant.

Joseph F. Nakamura, Sol., Fred E. McKelvey, Associate Sol., Brian Anderson, Trademark Atty., Washington, D. C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MARKEY, Chief Judge.

Nantucket, Inc. (Nantucket) appeals from a decision of the Trademark Trial and Appeal Board (board) affirming a refusal to register the mark NANTUCKET for men's shirts on the ground that it is "primarily geographically deceptively misdescriptive." *In re Nantucket, Inc.*, 209 USPQ 868 (TTAB 1981). We reverse.

## BACKGROUND

On March 13, 1978, Nantucket, based in North Carolina, filed application serial number 162,716 for registration of NANTUCKET for men's shirts on the principal

register in the Patent and Trademark Office (PTO), alleging a date of first use of February 2, 1978.

Refusal to register was based on § 2(e)(2) of the Lanham Act, 15 U.S.C. § 1052(e)(2), as interpreted by the board in *In re Charles S. Loeb Pipes, Inc.*, 190 USPQ 238 (TTAB 1975), and in §§ 1208.02, 1208.05 and 1208.-06 of the *Trademark Manual of Examining Procedure* (TMEP).

Section 2(e)(2) provides:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

. . . .

(e) consists of a mark which, . . . (2) when applied to the goods of the applicant is *primarily geographically descriptive or deceptively misdescriptive* of them . . . . [Emphasis supplied.]

TMEP § 1208.02 indicates that a mark is *primarily geographical,* inter alia, if it "is the name of a place which has general renown to the public at large and which is a place from which goods and services are known to emanate as a result of commercial activity."

The examiner, citing a dictionary definition of "Nantucket" as an island in the Atlantic Ocean south of Massachusetts, concluded that the mark NANTUCKET was either primarily geographically descriptive or primarily geographically deceptively misdescriptive, depending upon whether Nantucket's shirts did or did not come from Nantucket Island.

Nantucket informed the PTO that its shirts "do not originate from Nantucket Island," and insisted that the mark would not be understood by purchasers as representing that the shirts were produced there because the island has no market place significance vis-à-vis men's shirts. Nantucket further asserted that the phrase "when applied to the goods of the applicant," indicates a congressional intent that "descriptiveness" not be determined in a vacuum, but only in connection with the nature of an applicant's goods. As applied to shirts, it was argued, NANTUCKET is arbitrary and nondescriptive, because there is no association in the public mind of men's shirts with Nantucket Island.

The examiner's final refusal was based on the view that, because the shirts did not come from Nantucket Island, NANTUCKET is "primarily geographically deceptively misdescriptive."

Before the board, Nantucket relied upon a number of cases, of which *In re Circus Ices, Inc.*, 158 USPQ 64 (TTAB 1968), is representative, for its asserted "public association" or "noted for" test. In that case, the board said:

The term "HAWAIIAN", meaning of or pertaining to Hawaii or the Hawaiian Islands, possesses an obvious geographical connotation, but it does not necessarily follow therefrom that it is primarily geographically descriptive of applicant's product within the meaning of Section 2(e).

In determining whether or not a geographical term is primarily geographically descriptive of a product, *of primary consideration is whether or not there is an association in the public mind of the product with the particular geographical area,* as for example perfumes and wines with France, potatoes with Idaho, rum with Puerto Rico, and beef with Argentina. Cf. *National Lead Company v. Wolfe et al.,* 105 USPQ 462 (CA 9, 1955).

In the present case, it has not been made to appear that Hawaii or the Hawaiian Islands are noted for flavored-ice products or that the term "HAWAIIAN" is used by anyone to denote the geographical origin of such products.

On the record presented in this case, we are not persuaded that "HAWAIIAN" is either primarily geographically descriptive or deceptively misdescriptive as applied to applicant's product. [Emphasis supplied.]

In affirming the refusal to register here, the board referred to *In re Amerise,* 160 USPQ 687 (TTAB 1969) and *Charles S. Loeb Pipes,* as setting criteria for determin-

ing registrability of geographic terms. In its opinion in this case, the board set forth a test based on those criteria:

> (a) whether the term conveys to consumers primarily or immediately a geographical connotation, i.e., whether it conveys a readily recognizable geographical significance to the average consumer [if not, the mark is registrable]; (b) if so, whether the applicant's goods or services do in fact come from the place so named [if they do, the term is primarily geographically descriptive; if they do not, it is primarily geographically deceptively misdescriptive]; and (c) if the term conveys primarily a geographical connotation and the goods or services of the applicant do not come from the place so named, whether the use of the term is calculated, by plan, design, or implication, to deceive the public as to the geographical origin of the goods bearing the mark [if so, the mark is deceptive and falls within the absolute prohibition of Section 2(a)].[1]

*Nantucket,* 209 USPQ at 870. In referring to *Amerise,* the board viewed the "noted for" test, mentioned in *Circus Ices,* as relevant only to whether a geographic term is deceptive under § 2(a). Regarding § 2(e)(2), the board said:

> [A]ny term which, when applied to the goods or services of the applicant, conveys to consumers primarily or immediately a geographical connotation is precluded from registration under Section 2(e)(2) notwithstanding the fact that the area or place named is not "noted for" goods or services of that type . . . . Accordingly, the case of In re Circus Ices, Inc., supra, and any other case in which we may have similarly relied upon the "public association" or "noted for" test as the means for determining registrability

of a geographic term under Section 2(e)(2), is hereby overruled.

*Id.* at 871.

The board concluded that the "term 'NANTUCKET' has a readily recognizable geographic meaning, and . . . no alternative non-geographic significance . . . and hence falls within the proscription of Section 2(e)(2)." *Id.*

## ISSUE

Did the board err in refusing registration of NANTUCKET for shirts on the principal register in view of § 2(e)(2)?

## OPINION

### The Board's Test

■ The board correctly notes that its test for registrability of geographic terms is "easy to administer" and "*minimizes* subjective determinations by eliminating any need to make unnecessary inquiry into the nebulous question of whether the public associates particular goods with a particular geographical area in applying Section 2(e)(2)."[2] [Emphasis in original.] Ease-of-administration considerations aside, the board's approach does raise the question of whether public association of goods with an area must be considered in applying § 2(e)(2). That question is one of first impression in this court. We answer in the affirmative.

The board's test rests mechanistically on the one question of whether the mark is recognizable, at least to some large segment of the public, as the name of a geographical area. NANTUCKET is such. That ends the board's test. Once it is found that the mark is the name of a known place, i.e., that it has "a readily recognizable geo-

---

1. Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a) provides in pertinent part: "No trademark . . . shall be refused registration . . . unless it—
   (a) consists of or comprises immoral, deceptive, or scandalous matter . . . ."

2. The board's desire to escape "subjective determinations" and inquiry "into the nebulous question of whether the public associates particular goods with a particular area" is under-

standable. The determinations and inquiry required in applying § 2(e)(2) do not differ in their essence, however, from those required in applying numerous other sections of the Lanham Act which involve an expectable public reaction to a mark or set of marks. Indeed, as the board noted, it has previously considered public association in applying a "noted for" test under § 2(a).

graphic meaning," the next question, whether applicant's goods do or do not come from that place, becomes irrelevant under the board's test, for if they do, the mark is "primarily geographically descriptive"; if they don't, the mark is "primarily geographically deceptively misdescriptive." Either way, the result is the same, for the mark must be denied registration on the principal register unless resort can be had to § 2(f).[3]

### The Statute

One flaw in the board's test resides in its factoring out the nature of applicant's goods, in contravention of § 2(e)(2)'s requirement that the mark be evaluated "when applied to the goods of the applicant," and that registration be denied only when the mark is geographically descriptive or deceptively misdescriptive "of them" (the goods).

Another flaw in the board's test lies in its failure to give appropriate weight to the presence of "deceptively" in § 2(e)(2).[4] If the goods do not originate in the geographic area denoted by the mark, the mark might in a vacuum be characterized as geographically misdescriptive, but the statutory characterization required for denial of registration is "geographically *deceptively* misdescriptive." [Emphasis supplied.] Before that statutory characterization may be properly applied, there must be a reasonable basis for believing that purchasers are likely to be deceived.[5]

■ Thus, the board's test does not track the statute. Moreover, in rendering functionless the phrase "when applied to the goods of the applicant" and the word "deceptively," the test violates a cardinal rule of statutory construction, i.e., that a legislature is presumed to have used no superfluous words. *Platt v. Union Pacific R.R. Co.*, 99 U.S. 48, 58, 25 L.Ed. 424 (1878); *Tabor v. Ulloa*, 323 F.2d 823, 824 (CA 9 1963). "It is the duty of the court to give effect, if possible, to every clause and word of a statute." *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 394, 27 L.Ed. 431 (1882); *see United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955).

■ Each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole. *NLRB v. Lion Oil Co.*, 352 U.S. 282, 288–90, 77 S.Ct. 330, 333–34, 1 L.Ed.2d 331 (1957), and it is not proper to confine interpretation to the one section to be construed. *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). These rules of statutory construction prohibit differing treatment of "deceptively misdescriptive" in §§ 2(e)(1) and 2(e)(2).[6] In *In re Automatic Radio*

---

**3.** Section 2(f) provides:

Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.

**4.** Debate in the House concerning the word "deceptively" indicates that it is not mere surplusage, that its addition was intentional, not accidental, and that it has meaning. *Proposed Bills to Provide for the Registration and Protection of Trade-Marks:* Hearings on H.R. 102, H.R. 5461 and S. 895 Before the Subcomm. on

Trade-Marks of the House Comm. on Patents, 77th Cong., 1st Sess. 84–86 (1941).

**5.** Reasonable persons are unlikely to believe that bananas labeled ALASKA originated or were grown in Alaska. On the other hand, reasonable persons are quite likely to believe that salmon labeled ALASKA originated in the waters of that state. The board recognized this decisional parameter in its references to French wine, Idaho potatoes, etc., in *Circus Ices*, 158 USPQ at 64.

**6.** At the Subcommittee Hearings, *supra*, n. 4, "deceptively" was inserted before "misdescriptive" in both sections. A witness at that hearing observed:

Now, ivory is descriptive only with respect to the tusks of the elephant. Ivory is descriptive only of ivory. When applied to soap it is perfectly registrable although it is misde-

*Mfg. Co.*, 56 CCPA 817, 822, 404 F.2d 1391, 1396, 160 USPQ 233, 236 (1969), this court, speaking of § 2(e)(1), said: "The proscription is not against misdescriptive terms unless they are deceptive. We do not think AUTOMATIC RADIO on an air conditioner, an ignition system, or antenna, is likely to deceive anyone."

The board recognized in its opinion in this case that Section 5(b) of the Trademark Act of 1905 precluded registration of marks which were "merely a geographic name or term." Sec. 5, 33 Stat. 725–26. Under that Act, a term appearing in an atlas or gazetteer would be refused registration. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 14.11 at 509 (1973). The board then described the effect of the Lanham Act in narrow terms, saying: "[T]oday registration of a geographic name or term may not properly be refused if the geographic meaning is minor or obscure or if the term has an alternative non-geographic meaning." *Nantucket*, 209 USPQ at 870. Presumably, the board would also view as registrable the name of an area totally devoid of commercial activity. TMEP 1208.02 instructs examiners to note whether goods (in general) "are known to emanate" from the area. Nothing in the Lanham Act, however, warrants the limitation placed on § 2(e)(2) by the board. Indeed, the board's test, in its concentration on whether the mark is a place name, would resurrect most if not all of the pre-Lanham Act practice with respect to such terms.

### Public Association

Geographic terms are merely a specific kind of potential trademark, subject to characterization as having a particular kind of descriptiveness or misdescriptiveness. Registration of marks that would be perceived by potential purchasers as describing or deceptively misdescribing the goods themselves may be denied under § 2(e)(1).

Registration of marks that would be perceived by potential purchasers as describing or deceptively misdescribing the geographic origin of the goods may be denied under § 2(e)(2). In either case, the mark must be judged on the basis of its role in the marketplace.

As the courts have made plain, geographically deceptive misdescriptiveness cannot be determined without considering whether the public associates the goods with the place which the mark names. If the goods do not come from the place named, and the public makes no goods-place association, the public is not deceived and the mark is accordingly not geographically deceptively misdescriptive.

In *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486, 168 USPQ 609, 612–13 (CA 5 1971), the court said: "[T]he wording of the statute makes it plain that not all terms which are geographically suggestive are unregistrable. . . . Indeed, the statutory language declares nonregistrable only those words which are 'primarily geographically descriptive.' The word 'primarily' should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure, remote, *or unconnected with the goods.*" [Emphasis added.] Thus, if there be no connection of the geographical meaning of the mark with the goods in the public mind, that is, if the mark is arbitrary when applied to the goods, registration should not be refused under § 2(e)(2).

In *National Lead Co. v. Wolfe*, 223 F.2d 195, 199, 105 USPQ 462, 465 (CA 9), *cert. denied*, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778, 107 USPQ 362 (1955), the court held that neither DUTCH, nor DUTCH BOY, as applied to paint, was used "otherwise than in a fictitious, arbitrary and fanciful manner," [7] and noted that "there is no likelihood

---

scriptive. But the ivory for soap is certainly not descriptive of soap. It is misdescriptive of soap, but it is not deceptive. *Hearings* at 85.

7. The board has similarly found geographic terms arbitrary and fanciful. In *In re International Minerals & Chemical Corp.*, 147 USPQ 262 (TTAB 1965), the board stated:

that the use of the name 'Dutch' or 'Dutch Boy' in connection with the appellant's goods would be understood by purchasers as representing that the goods or their constituent materials were produced or processed in Holland or that they are of the same distinctive kind or quality as those produced, processed or used in that place."

In *LaTouraine Coffee Co., Inc. v. Lorraine Coffee Co., Inc.*, 157 F.2d 115, 116–17, 70 USPQ 429, 431 (CA 2), *cert. denied*, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663, 71 USPQ 328 (1946), the court noted that "courts have consistently held . . . that, when [a geographic term] is used in an 'arbitrary' or fictitious sense, it may be the subject of a valid trademark." [8] Writing after the Lanham Act had passed but before it became effective, the court referred to that Act: "This judicial construction has received legislative approbation." Disposing of the contention that LaTOURAINE

was "merely geographical" under the Trademark Act of 1905, (as the name of the ancient French province, Touraine), the court said the mark "neither has nor professes to have any relation to the source of its coffee, the place of manufacture, or the place of sale. It is an entirely arbitrary name." [9]

*LaTouraine* was followed in *Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc.*, 93 USPQ 250, 254 (SDNY 1951), aff'd, 204 F.2d 223, 97 USPQ 246 (CA 2), *cert. denied*, 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351, 99 USPQ 491 (1953), wherein the mark was HYDE PARK for men's suits. The trial court said: "Although the term 'Hyde Park' is a geographical name, nevertheless as used by the plaintiff it is not 'merely geographical'. If it was used . . . in an 'arbitrary or fictitious sense', it could be the subject of a valid registered trade mark . . . . The words 'Hyde Park' are used commercially to mean

Certainly the word "KENTUCKY" is geographic and if applicant were seeking registration of "KENTUCKY TURF" for turf, we would be compelled to rule that the mark is unregistrable. The applicant's product is fertilizer and the mark does not signify that the fertilizer is manufactured in Kentucky or intended to be used or sold only in Kentucky. In its primary significance, "KENTUCKY TURF" does not signify fertilizer at all. The *mark is but a fanciful indication of source* and merely suggests a desired result from the use of the product (n b *National Lead Company v. Wolfe et al.*, 105 USPQ 462 (CA 9, 1955), and *Hamilton Shoe Company v. Wolf Brothers*, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629, wherein the marks "DUTCH BOY" for paints and "THE AMERICAN GIRL" for shoes were held, respectively, to be arbitrary and fanciful rather than geographically descriptive). [Emphasis added.]

In a footnote to its opinion in the present case, the board says its test here is "concerned solely with a single term or a unitary designation," not with composite trademarks. *Nantucket*, 209 USPQ at 870. Yet the case relied upon as authority for the board's test, *Amerise*, involved the composite mark ITALIAN MAIDE, and the case overruled by the board, *Circus Ices*, concerned the composite mark HAWAIIAN ICES. Determination of registrability in light of § 2(e)(2) should not depend on whether the mark is a unitary or composite mark.

**8.** That arbitrary or fanciful geographic terms may serve as trademarks, and that public association is determinative of arbitrariness or fan-

cifulness, is recognized in 3 *Restatement of Torts*, § 720, Comment d at 577–78 (1938):

*Arbitrary or fanciful use.* The reasons for the rule that geographical names cannot be trade-marks do not weigh heavily when the geographical name has obviously only an arbitrary or fanciful significance in connection with the goods upon which it is used. Thus Gibraltar may be a trade-mark for automobiles since there is no likelihood that such use of the name would lead purchasers to suppose that there is any particular relation between the automobiles and the geographical locations known by that name, or any likelihood that it would seriously interfere with the freedom of merchants at Gibraltar to use that name. Again, Ethiopian may be a proper trade-mark for ladies' stockings; for, while suggestive of a certain color and sheen, it is only fancifully so and there is no likelihood that other merchants may have occasion properly to use the name Ethiopia on stockings since there is no factor of importance associating stockings with Ethiopia. Such is also the case of Pacific for bread or Arctic for refrigerators.

**9.** *See also Health Industries, Inc. v. European Health Spas*, 489 F.Supp. 860, 868, 208 USPQ 605, 610 (D.S.Dak.1980). The court, citing *LaTouraine*, held EUROPEAN HEALTH SPAS arbitrary rather than geographic: "The term is being used by plaintiff primarily to convey romantic overtones, rather than primarily describe where the services originate."

a product that is stylish or of high quality." [10]

More recently, *LaTouraine* was relied on in holding that BRITTANIA was arbitrary when applied to fashion jeans. *Schoenfeld Industries, Inc. v. Foster Industries, Inc.,* No. 79 Civ. 4917 (SDNY Sept. 28, 1979). The court noted that the jeans did not originate in Brittany, a French province, that BRITTANIA was not likely to suggest that origin to a reasonable buyer, and that, because Brittany was not noted for fashion jeans, it was unlikely that a buyer would purchase BRITTANIA jeans on the assumption that they came from Brittany.[11]

### The Present Case

Section 2(e)(2) provides that registration shall not be refused *unless* the mark is primarily geographically deceptively misdescriptive of the goods. The only indication of record that NANTUCKET is primarily a geographical term resides in dictionary listings referring to Nantucket Island as a summer resort and former whaling center. There is no evidence of record to support a holding that the mark NANTUCKET as applied to men's shirts is "deceptively misdescriptive." There is no indication that the purchasing public would expect men's shirts to have their origin in Nantucket when seen in the market place with NANTUCKET on them. Hence buyers are not likely to be deceived, and registration cannot be refused on the ground that the mark is "primarily geographically deceptively misdescriptive."

Accordingly, the decision of the board is *reversed.*

REVERSED.

NIES, Judge, concurring.

I join the court's holding that there must be an indication that "the purchasing public would expect men's shirts to have their origin in Nantucket when seen in the marketplace with NANTUCKET on them." Moreover, I agree that on the present record the board's decision holding that NANTUCKET for men's shirts is "primarily geographically deceptively misdescriptive" must be reversed. I choose to concur, however, because I reach the same conclusion from a different direction, and because the court leaves open what the PTO must show to make a prima facie case under § 2(e)(2) with respect to this application.

Appellant had urged that the court adopt the rule that a goods/place association can be established under § 2(e)(2) only if the place identified by the geographic name claimed as a mark was "noted for" the goods, like IDAHO for potatoes or PARIS for perfume. The standard of registrability enunciated by the court has not been restricted to such a stringent test. To have done so would have created as rigid a rule in favor of registration as the board had used to deny registration. If a geographic name were arbitrary in the absence of a reputation for the goods, any trader who is the *first* to use any geographic name for particular goods would, thereby, appropriate it to his exclusive use. Moreover, the rationale advanced by appellant is not limited to geographic names of places where the likelihood of future commercial exploitation by others is small but would be equally applicable if the claimed mark for shirts were CHICAGO. The answer to the basic question of public association of goods with a place, i.e., geographic descriptiveness, cannot be decided on this simplistic basis.

My reasons for rejection of appellant's position, which are based on concepts from the common law, more than on statutory construction, are set out herein.

---

**10.** Nantucket contends that the instant case is analogous to *Hyde Park,* arguing that as HYDE PARK was registrable for men's suits because it was suggestive of stylishness or high quality, not of Hyde Park as a source of men's suits, so also should NANTUCKET be registrable for shirts as suggestive of fashionable summer resort stylishness, not of Nantucket as the source of shirts.

**11.** It does not appear to us that BRITTANIA has ever referred to Brittany. However, Britannia—the phonetic equivalent, of which the mark is a misspelling—has long been used to refer to Great Britain as in the phrase "Britannia rules the waves."

*Applicable Common Law Concepts*

Protection and registration of geographic names as marks embodies concepts comparable to those applicable to surnames as well as to terms which are descriptive of the nature or quality of goods or services. A geographic name might appropriately be viewed as a hybrid in this respect. Courts do not readily recognize trademark rights in such names or terms because of the legitimate interests of other merchants in truthfully being able to use them in connection with their own wares or services.

In determining whether a geographic term is registrable under the Lanham Act and upon what conditions, the first question is whether the name is primarily of geographic significance but, contrary to the board's view, that does not end the matter.

A geographic term may be used in a manner which is (1) inherently distinctive, which includes arbitrary and suggestive usage, (2) generic, (3) descriptive, (4) deceptively misdescriptive, or, (5) deceptive. Different consequences flow from the finding of what is the appropriate category or categories for the mark, which to some extent overlap. In any event, such a determination can only be made by consideration of the specific goods on which the name or term is used. In every case the issue which must be resolved is: What meaning, if any, does the term convey to the public with respect to the goods on which the name is used?

In resolving the question of registrability of geographic names, the development of the law with respect to protection of such terms provides guidance. Basic to consideration of the registrability and protectability of any geographic term as a trademark is the routine commercial practice of merchants, whether they are growers, manufacturers, distributors, or local retailers, in placing the name of their location on their goods or using the name in their trade names. Because the public would be aware of common trade practice, the common law originally deemed all use of geographic names wholly *informational* and unprotectible. It was believed such names could not function and, in any event, should not be recognized as the identification of a single source.[1] Thus, we must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business.[2] There is a public goods/place association, in effect, presumed.

However, as with other terms which are descriptive when first used, it came to be recognized that through substantially exclusive and extensive use, a merchant might develop a protectible goodwill in such a geographically descriptive name upon proof that the name ceased being informational to the public and came to indicate a source of goods. Thus, if a manufacturer located in Chicago were to display the name CHICAGO on his shirts, for example, it has been the law for over a century that he could prevent another's subsequent use only

1. This view was expressed in *Canal Co. v. Clarke*, 80 U.S. 311, 325, 20 L.Ed. 581 (1872):

   Nothing is more common than that a manufacturer sends his products to market, designating them by the name of the place where they were made. But we think no case can be found in which other producers of similar products in the same place, have been restrained from the use of the same name in describing their goods.

2. A geographic name may be informational in more ways than naming the place of production or growth of the goods. As stated in *Minn. Mining & Mfg. Co. v. Minn. Linseed Oil Paint Co.*, 43 CCPA 746, 756–57, 229 F.2d 448, 456–57, 108 USPQ 314, 321 (1956):

   The respective parties rest their position in these three cases upon the unqualified basis that their business is located and operated in the State of Minnesota and that their goods are either grown, mined, manufactured, processed, sold, or distributed there. The term "Minnesota" as thus used by them from the outset is therefore primarily geographic under the provisions of section 2(e) of the Act of 1946.

   A geographic name may also come to describe or identify the type of goods, such as Boston baked beans or Brussels sprouts, regardless of where produced, *Schweizerishe Kaeseunion Bern v. Saul Stark, Inc.*, 162 Misc. 485, 293 N.Y.S. 816 (1937) (Swiss cheese held generic), but this aspect of use (i.e. generic) is not involved here.

if he could establish "secondary meaning" in the term.[3] Until secondary meaning has been developed in a descriptive term, the public cannot be confused that the term indicates source in a particular user and others are free to make comparable use of the term. *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043, 208 USPQ 175, 180 (CA 2 1980); J. McCarthy, 1 Trademarks and Unfair Competition § 1415, p. 493 (1973). While a merchant in Chicago will not be deprived of his right to use the name in a non-trademark display if another acquires trademark rights in CHICAGO, he does become limited in the choice of marks for related goods or services and must operate, thereafter, under the constraints of avoiding likelihood of confusion with CHICAGO per se for shirts. *American Waltham Watch Co. v. United States Watch Co.*,

supra. It is, thus, to his advantage to have the term remain in the public domain and he can take appropriate steps to keep it there by using the name himself.

### Statutory Application of the Common Law

These concepts, which balance the interests of different persons, are embodied in § 2(e)(2) of the Lanham Act, which provides that a term which is primarily geographically descriptive is initially unregistrable; and § 2(f), which allows registration on a showing of distinctiveness.[4] J. Gilson, Trademark Protection and Practice § 2.07, pp. 2–47 and 2–48 (1980).

Since the mark CHICAGO is, thus, unregistrable even to a Chicago manufacturer who is the first to use that name for shirts without a showing of distinctiveness, one cannot accept, as urged by appellant, that the law recognizes better rights, ipso facto, in a company not located there which hap-

---

**3.** *Montgomery v. Thompson*, [1891] AC 217; *Wotherspoon v. Currie*, L.R. 5 E. & I. App. 508, 521–22 (1872), was the first case in which the expression "secondary meaning" occurred. With respect to rights in GLENFIELD, the name of a town where the appellants had formerly been located, Lord Westbury stated in his concurring opinion:

> I take it to be clear, from the evidence, that, long antecedently to the operations of the Respondent, the word "Glenfield" had acquired a secondary signification or meaning in connection with a particular manufacture—in short, it had become the trade denomination of the starch made by the Appellants. It was wholly taken out of its ordinary meaning, and in connection with starch had acquired that peculiar secondary signification to which I have referred. The word "Glenfield," therefore, as a denomination of starch, had become the property of the Appellants. It was their right and title in connection with the starch.

*See also French Republic v. Saratoga Vichy Co.*, 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247 (1903); *Elgin Nat. Watch Co. v. Ill. Watch Case Co.*, 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365 (1901); *Tillamook County Creamery Asso. v. Tillamook Cheese & Dairy Asso.*, 345 F.2d 158, 145 USPQ 244 (CA 9), *cert. denied*, 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); *Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88, 130 USPQ 294 (CA 7), *cert. denied*, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961); *California Apparel Creators v. Wieder of California, Inc.*, 162 F.2d 893, 74 USPQ 221 (CA 2), *cert. denied*, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393

(1947); *Alaska Northwest Publishing Co. v. A. T. Publishing Co.*, 319 F.Supp. 963, 168 USPQ 266 (D. Alaska), *reversed for failure of proof of secondary meaning*, 458 F.2d 387, 173 USPQ 3 (CA 9 1970); *Chappell v. Goltsman*, 91 USPQ 30 (D. Alabama 1951); *Massachusetts Mutual Life Ins. Co. v. Massachusetts Life Ins. Co.*, 356 Mass. 287, 249 N.E.2d 586, 163 USPQ 119 (1969); *Pan American Realty Corp. v. Forest Park Manor, Inc.*, 160 USPQ 346 (Mo.1968); *Modesto Creamery v. Stanislaus Creamery Co.*, 168 Cal. 289, 142 P. 845 (1914); *American Waltham Watch Co. v. United States*, 173 Mass. 85, 53 N.E. 141 (1899).

**4.** 15 U.S.C. § 1052(f) provides:

> Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the 5 years next preceding the date of the filing of the application for its registration.

This section represented a major departure from the Trademark Act of 1905, which virtually precluded registration of geographic names, even though state law had long protected such usage under the theory of unfair competition. *See*, e.g., *American Waltham Watch Co. v. United States Watch Co.*, supra.

pens to be the first to use that name for shirts.[5] It is simply illogical to say that CHICAGO is descriptive of shirts if the manufacturer is located in Chicago, but arbitrary, if he is not located there. The public is not aware of the actual locations of most businesses. The public is aware of trade practice and makes, or is presumed likely to make, a goods/place association in either instance. Nor is it any less objectionable to a Chicago merchant if the term is used by a non-local rather than another local merchant.

The legislative history of the Lanham Act is far from a model of clarity, but it was clearly brought to Congress' attention that use of NEW YORK as a mark by a New York merchant or by a Boston merchant should be subject to at least equally stringent requirements with respect to registration to reflect the protection of such names provided under the common law. (See text referenced particularly at notes 26, 27, 28 of appendix.)

Section 2(e) originally was drafted to preclude registration on the Principal Register of a term which has a "geographic or descriptive meaning" when applied to the goods. The provision was restricted and divided and became (1) "merely descriptive [of the goods]," or (2) "primarily geographically descriptive." The latter change was to exempt from § 2(e)(2) a mark, such as ALASKA for bananas. Next, § 2(e)(2) was changed to insert "or misdescriptive" with the explanation (text referenced by n. 26 of appendix):

> ... for example, in a case where New York was used in a place other than New York—"New York" was used in Boston as a trade-mark. Now it might not be descriptive if it were not used for New York, don't you see, but it would be misdescriptive and be equally objectionable.

It then appears that it was feared that this language might bar names and terms used in an arbitrary (or no more than suggestive) manner with respect to particular goods.

Arguably any nondescriptive use, even if arbitrary, is, in a sense, misdescriptive. Accordingly, the word "deceptively" was inserted before "misdescriptive" in both § 2(e)(1) and § 2(e)(2), again, to avoid technical rejections of applications to register marks such as IVORY for soap, or ALASKA for bananas.

Thus, where usage would be understood by the public as arbitrary, i.e., misdescriptive but not "deceptively" so, the term or name claimed as a mark is registrable without a showing of distinctiveness. *In re Automatic Radio Manufacturing Co.*, 56 CCPA 817, 822, 404 F.2d 1391, 1396, 160 USPQ 233, 236 (1969). On the other hand, if the public would perceive a misdescriptive use of a geographic name as a descriptive use, the claimed mark is deceptively misdescriptive and unregistrable without secondary meaning. That a place is "noted for" goods is only one circumstance under which a geographic name would be barred by § 2(e)(2). "Noted for" and "public association" thus, are not equivalent tests for determining public goods/place association. *Singer Mfg. Co. v. Birginal-Bigsby Corp.*, 50 CCPA 1380, 319 F.2d 273, 138 USPQ 63 (1963), which held AMERICAN BEAUTY to be primarily geographically deceptively misdescriptive when applied to sewing machines of Japanese origin is another example. There was no holding that "America" must be "noted for" sewing machines for the mark to be barred by § 2(e)(2).

The solicitor suggests that *Singer Mfg. Co. v. Birginal-Bigsby* should have been decided under § 2(a), not § 2(e)(2). I disagree. The provisions of § 2(e)(2) are broad enough to encompass a deceptive use of a geographic term barred by § 2(a). I see nothing in the statute that makes the sections mutually exclusive. Some geographic names rejected under § 2(e)(2) may be registrable in accordance with § 2(f); others will encounter the absolute bar of § 2(a). Whether the mark contains "deceptive" matter within the meaning of § 2(a) be-

---

**5.** This concept, too, is embodied in *Wotherspoon v. Currie*, supra. Secondary meaning was required in a geographic name which the plaintiffs continued to use after moving from that location.

comes material when resort is made to § 2(f) or the Supplemental Register (15 U.S.C. § 1091), questions not present in this case.

Concerning the authority cited by the appellant, it is apparent that the issue of whether the public is likely to believe a particular geographic name is informational when it appears on a product has been lost sight of in some decisions, which have applied mechanical rules wholly inappropriate to trademark cases. A geographic name is not unprotectible or unregistrable because it can be labelled a geographic name, but because it tells the public something about the product or the producer about which his competitor also has a right to inform the public. Thus, the names of places devoid of commercial activity are arbitrary usage.

In this category are names of places such as ANTARCTICA, MOUNT EVEREST, or GALAPAGOS, at least when used for ordinary commercial products, such as beer and shoes. Names such as SUN, WORLD, GLOBE, MARS, or MILKY WAY are also arbitrary, not informational; competitors do not need to use the terms to compete effectively. *Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association*, 651 F.2d 311, 211 USPQ 844, *reh'g denied*, 659 F.2d 1079 (CA 5 1981); *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486, 168 USPQ 609, 612–13 (CA 5 1971). If the pertinent issue is kept in mind, the question of geographic descriptiveness or its corollary, deceptive misdescriptiveness, can more easily be resolved.

It is also apparent that some opinions fail to grasp that the defense of geographic descriptiveness, put forth by an alleged infringer, should be available only to one with a legitimate personal interest in use of the name. When raised by others, the defense can only be characterized as contrived. In this respect, a geographic name is comparable to a surname in protectibility: one of the same name may have a defense of inherent right to use; one with a different name should not be heard to demand that secondary meaning must be established by a prior user. The issue in such a case is which of the two parties has superior rights and whether the public interest is served by enjoining use by the latecomer. The first of the two users in such litigation need not prove rights against the world to prevail. *National Lead Co. v. Wolfe*, 223 F.2d 195, 200, 105 USPQ 462, 465–66 (CA 9), *cert. denied*, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955).

In *National Lead*, supra, appellant established long prior use and registration of DUTCH in the mark DUTCH BOY for paint, and intentional infringement by appellee's subsequent use of DUTCH for paint. Appellee, a San Francisco company, attempted to justify its use as fair use by asserting that DUTCH indicated a particular quality of paint, and failing that, that DUTCH was so widely used by others on paint as to be of no trademark significance, an assertion that also failed. The rationale for recognition of an equal right to identify one's place of business was not present in the case. Moreover, the mark DUTCH BOY was not considered unregistrable even under the Act of 1905. A determination of geographic descriptiveness turns not only on the goods to which the mark is applied, but also, the entire context in which the name is used.

In *LaTouraine Coffee Co. v. Lorraine Coffee Co.*, 157 F.2d 115, 70 USPQ 429 (CA 2), *cert. denied*, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946) (LaTOURAINE and LORRAINE for coffee), and *Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc.*, 93 USPQ 250 (SDNY 1951), *aff'd*, 204 F.2d 223, 97 USPQ 246 (CA 2), *cert. denied*, 346 U.S. 827, 74 S.Ct. 46, 98 L.Ed. 351 (1953) (HYDE PARK for men's suits and women's dresses, respectively), again the infringers were merely mouthing the litany that geographic names are inherently unprotectible without any basis for assertion of a right to use the geographic name as a trader in that locale. In the *Hyde Park* case, moreover, in view of the widespread use of the name by others on clothing, the court concluded that HYDE PARK did not have a geographic significance but indicated stylishness. Neither this case nor any other cited by appellant

provides authority for the principle that a place must be "noted for" goods before use of its name as a mark will be held "primarily geographically deceptively misdescriptive." Even the test enunciated in *In re Circus Ices, Inc.*, 158 USPQ 64 (TTAB 1968), was not limited to the "noted for" test but included the broader test "used by anyone to denote the geographical origin of such products." *Id.*

The rejection of the "noted for" test as the sole basis for the rejection under § 2(e)(2), of course, does not determine whether NANTUCKET on shirts is or is not registrable. The question remains: Are purchasers likely to believe NANTUCKET is descriptive in that it identifies the location of the source of the shirts?

### The Present Case

The PTO believed it had made a prima facie case for rejection of the application under § 2(e)(2) by proving that the name NANTUCKET was primarily of geographic significance, not being an obscure place or having other meanings.[6] That NANTUCKET is considered "primarily geographic," while not disputed by appellant, does not make the term *descriptive* of the goods or make a prima facie case. In my view it is incumbent on the PTO to put forth evidence that other businesses have or are likely to have legitimate interests in use of the geographic name claimed by the applicant. The solicitor suggests that this court may take judicial notice that Nantucket has a lively summer tourist trade and that men's shirts are generally available in summer resorts and locations frequented by tourists. I do not believe it is appropriate to take such judicial notice at the appellate level as to do so would deprive an applicant of the opportunity to respond. *In re Water Gremlin Co.*, 635 F.2d 841, 845, 208 USPQ 89, 92 (CCPA 1980). Moreover, as pointed out by appellant, the solicitor's position is not the board's position. Were the application for NANTUCKET for steam turbines, the board's test would preclude registration.

The PTO frequently makes use of telephone directories in connection with proving surname significance. The same type of evidence could be made of record to show that businesses dealing in the same or related goods exist in the named area. This would, in my view, make a prima facie case. With a name such as CHICAGO, such a prima facie case in all likelihood could be made regardless of goods and an applicant would have a difficult task to overcome it. With a name such as NANTUCKET, one would expect that there are at least some goods for which the term is arbitrary. If the PTO makes a prima facie case which the applicant is unable to overcome, the applicant must resort to proof of distinctiveness in accordance with § 2(f) to secure registration.[7]

### Appendix

### Legislative History of § 2(e) of the Lanham Act

In 1938, Congressman Fritz G. Lanham of Texas introduced H.R. 9041[1] to amend the Trademark Act of 1905.[2] H.R. 9041 provided in part:[3]

---

6. The question of whether a name *primarily* has a geographic significance is a difficult one but need not be addressed here as it is undisputed that NANTUCKET has such a significance. *See*, e.g., *In re Mid-West Abrasive Co.*, 32 CCPA 834, 146 F.2d 1011, 64 USPQ 400 (1945).

7. It must also be noted that it is incumbent upon an applicant to *disclose* conflicting rights in the mark in his application for registration to the "*best* of his knowledge or belief." It may be appropriate in some cases to conform a claim of exclusive rights to accommodate local interests.

1. H.R. 9041, 75th Cong., 3rd Sess., 83 Cong. Rec. 810 (1938). Prior to H.R. 9041, other bills were introduced seeking to amend the 1905 Act. *See* J. McCarthy, 1 Trademarks and Unfair Competition, § 5:4 (1973); Carter, *Legislative History of the New Trade-Mark Act*, 36 Trademark Rep. 121 (1946).

2. Act of February 20, 1905, ch. 592, 33 Stat. 724.

3. H.R. 9041, supra n. 1, § 3.

No mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration as a trade-mark on account of its nature unless it—

(a) Consists of or comprises . . . deceptive . . . matter [or]

\* \* \* \* \* \*

(e) Consists of a mark which when applied to the goods of the applicant has merely a descriptive or geographical meaning or is merely the name of an individual;

(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of any mark used by the applicant as a trade-mark in commerce which has become distinctive of the applicant's goods.

The reported hearings [4] in the House on H.R. 9041 include comments on the registration of geographical terms,[5] "secondary meaning" acquired in geographical terms,[6] and the "mechanical manner" in which the Patent Office applied § 5 of the 1905 Act.[7]

The prominent practitioner in the field, Mr. Edward S. Rogers, who played a significant role in drafting the Lanham Act (*See* 62 Trademark Rep. 197 (1972)), made the following statement:

The present construction of the Patent Office of that language [Sec. 5 of the 1905 Act] is that they take a word without reference to its connotation, and if it appears in the atlas anywhere as the name of a place, or if it appears in the Postal Guide they say that is a geographical name or term, and hence is not registrable.[8]

Another witness commenting on the above language stated:

[I]t leaves open to constant argument and bickering between applicants, attorneys, examiners, the Patent Office tribunals, and the courts as to whether a given trademark has "merely a descriptive or geographical meaning" or when it has such significance. To illustrate, the word "Alaska" would probably have no descriptive or geographical meaning applied to bananas, but applied to canned salmon would unquestionably have a descriptive as well as geographical meaning.[9]

H.R. 9041 did not reach the House floor during the 75th Congress.

In the 76th Congress, Congressman Lanham introduced H.R. 4744 [10] which in relevant part precluded registration of:

. . . a mark which, when applied to the goods of the applicant, has merely a descriptive or geographical, and no other, meaning . . . or is merely the name of an individual and has no other meaning.

H.R. 4744 also provided for registration of "any mark used by the applicant . . . which has become distinctive . . . ."

The House held hearings on H.R. 4744. During those hearings, Mr. Rogers suggested an amendment of Section 2(e) to preclude registration of a geographical mark only if the mark: [11]

. . . when applied to the goods of the applicant, is *primarily* geographical and descriptive of them . . . . [Emphasis added.]

There was also further discussion of the registration of geographic terms and Section 2(f), which proposed registration of

4. Hearings on H.R. 9041 Before the Subcomm. on Trade-marks of the House Comm. on Patents, 75th Cong., 3rd Sess. (1938).

5. *Id.* at 37, 41.

6. *Id.* at at 37, 63, 112, 113.

7. *Id.* at 71, 72, 111.

8. *Id.* at 71–72. For the historical accuracy of Mr. Roger's statement, *see* Daniels [a former Assistant Commissioner], "Trade-Marks from the Patent Office Point of View," 39 Trademark Rep. 383, 384 (1949).

9. Hearings, supra n. 4, at 111.

10. H.R. 4744, 76th Cong., 1st Sess., § 2(e), 84 Cong.Rec. 2242 (1939).

11. Hearings on H.R. 4744 before the Subcomm. on Trade-Marks of the House Comm. on Patents, 76th Cong., 1st Sess. 19 (1939).

marks which could be shown to be "distinctive." [12]

With respect to Section 2(f), Congressman Lanham said:

[t]he suggestions I was making is, simply because something is geographical or descriptive does not say that through use it may not become distinctive as to that article, and where it becomes distinctive then it is subject to registration as a trade-mark.

and

[t]he sole right would be acquired only when something which was descriptive or geographical became distinctive through use. It would be adapted to general use unless it became distinctive.[13]

Following hearings on H.R. 4744, Congressman Lanham introduced H.R. 6618 [14] which embodied the language suggested by Mr. Rogers. Section 2(e) of H.R. 6618 proposed to preclude registration of:

a mark which, (1) when applied to the goods of the applicant is merely descriptive of them, (2) when applied to the goods of the applicant is primarily geographically descriptive of them . . . , (3) is primarily a surname.

Section 2(f) was also changed from the H.R. 9041 version by additionally providing:

Substantially exclusive use as a mark by applicant, in commerce for two years prior to the application, may be accepted by the Commissioner as prima facie evidence of distinctiveness.

H.R. 6618 was passed by the House on July 17, 1939, following debate [15] in which Congressman Lanham pointed out that the bill would "protect owners of trademarks and conform federal trademark law to modern practice." [16] On June 22, 1940, the Senate passed a comparable bill, although with amendments not relevant here.[17] A motion to reconsider prevented the bill from reaching a conference Committee.[18]

H.R. 5461, introduced during the 77th Congress, retained the language of Section 2(e), but increased from two to five years the period in Section 2(f) for making a prima facie showing of distinctiveness.[19]

S. 895, also introduced during the 77th Congress, kept the two-year period in Section 2(f).[20] After consideration by the Senate Committee on Patents, S. 895 ultimately reached the Senate floor where it passed without debate.[21] Upon reaching the House, S. 895 was referred to the House Committee on Patents, which held hearings on S. 895, H.R. 102, and H.R. 5461.[22] The Committee print [23] of the proposed legislation differed from H.R. 5461 in that 2(e)(1) contained a prohibition against registration of misdescriptive marks, to wit:

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive of them, except as indications of regional origin may be registrable under section 4 hereof, or (3) is primarily merely a surname.

During hearings, there was discussion on the "distinctiveness" provision of Section

12. *Id.* at 26–32, 182, 183.

13. *Id.* at 28.

14. H.R. 6618, 76th Cong., 1st Sess., 84 Cong. Rec. 6534 (1939).

15. 84 Cong.Rec. 8030, 9302–07, 9374 (1939).

16. *Id.* at 9307.

17. 86 Cong.Rec. 8987–93 (1940).

18. *Id.* at 8993.

19. H.R. 5461, 77th Cong., 1st Sess., 87 Cong. Rec. 6563 (1941).

20. S. 895, 77th Cong., 1st Sess., §§ 2(e), 2(f), 87 Cong.Rec. 1032 (1941). A companion bill, H.R. 102, 77th Cong., 1st Sess., 87 Cong.Rec. 13 (1941), was also introduced in the House by Congressman Lanham.

21. 87 Cong.Rec. 7445–50 (1941).

22. Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcomm. on Trademarks of the House Comm. on Patents, 77th Cong., 1st Sess., (1941).

23. *Id.* at 30.

2(f).[24] There was also a proposal to deny registration of "misdescriptive" geographical terms.[25] A witness, referring to ABA recommendations concerning H.R. 5461, proposed to delete "misdescriptive" from 2(e)(1) to allow registration of a mark such as IVORY for soap, and to add "or misdescriptive" in 2(e)(2), stating: [26]

> ... for example, in a case where New York was used in a place other than New York—"New York" was used in Boston as a trade-mark. Now it might not be descriptive if it were not used for New York, don't you see, but it would be misdescriptive and be equally objectionable.

First Assistant Commissioner Frazer then made a further suggestion [27] that the word "deceptively" be inserted before "misdescriptive," in 2(e)(1) so that the restrictive language of 2(e)(1) would become:

> when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them ....

The following is a recount of the debate on this proposal: [28]

> MR. FRAZER. I was going to suggest, Mr. Chairman, that in line 19 before the word "misdescriptive" we insert the word "deceptively."
>
> MR. LANHAM. "Or deceptively misdescriptive"? What is your reaction to that, gentlemen?
>
> MR. ROGERS. There cannot be any objection to that.
>
> MR. MARTIN. I think it is an unnecessary repetition, because it is already covered, but I cannot see any objection to it.
>
> MR. LANHAM. But if, from the standpoint of administration, it would be helpful—"or deceptively misdescriptive"? Well, is there agreement on that?
>
> MR. STANLEY. Would "Ivory soap" be misdescriptive?
>
> MR. POHL. Mr. Chairman, the present act of 1905 has no such provision.

The existing trade-mark law, the act of 1905, speakes [sic] of merely descriptive marks, and the only reason why descriptive marks should not be registered is that the community should be free to use descriptive marks, prima facie, at least, until they have acquired a secondary meaning. Now by putting "or misdescriptive" in this place you will open up the doors to a new line of interpretation, and marks would become doubtful. The suggestive marks "Beechnut" for food products, "Holeproof" for hosiery, "Pussy-Willow" for silk, "Ivory" for soap, might not perhaps by any chance be deceptively misdescriptive. It leaves too much to interpretation.

Under the 1905 act these questions have not come up, and I believe it should not come up.

> MR. LANHAM. Of course, the more we simplify the administration, the more we clarify the status of the whole matter, it seems to me. And that is one reason I was anxious to have Mr. Frazer's reaction to this.
>
> MR. STOWELL. In paragraph (a) of this section there is a provision that deceptive marks shall not be registered. Under the practice of the Patent Office the meaning of the term as used there is very well recognized, and so far as I know there is no great question of that practice; *but introduced into a section such as section (e), which deals with a different type of objection, this term "deceptively misdescriptive" introduces into the law a basis for a new type of rejection which we know nothing about*, and it seems to me the sound thing to do is to leave the word "deceptive" in paragraph (a) to take care of those cases which the Patent Office has always taken care of under that word, and to eliminate the proposed phrase "deceptively misdescriptive" from line 19 of paragraph (e). [Emphasis added.]

24. *Id.* at 63–65.

25. *Id.* at 84–86.

26. *Id.* at 84.

27. *Id.* at 86.

28. *Id.* at 85–86.

MR. POHL. Now, Mr. Chairman, I have one more mere suggestion or remark. The situation is different with the geographical name, as Mr. Martin has pointed out. A man who makes watches in Waltham, Mass., and puts the name "Waltham" on the watches, uses that name as a geographically descriptive mark. If he moves from Waltham to Cambridge, then the name "Waltham" is no longer geographically descriptive. However, in that event under the bill as it now stands that mark would become registrable, the word "Waltham" merely because it is geographically nondescriptive.

MR. LANHAM. It would not be deceptively used on a well-know product though, would it?

MR. POHL. Well, it would not be deceptive on a well-known product, because the place of manufacture would perhaps in a secondary meaning of the mark not be very important. But the intent is to stop all geographical names, whether they happen to be geographically descriptive or whether they are not geographically descriptive, meaning that the goods come from that particular location. The important thing is the question. Is the name geographical? and that was my understanding of Mr. Frazer's objection to inserting "or misdescriptive" after "geographical."

(There was discussion of the record.)

MR. LANHAM. Let us get this on the record: On page 5 of the committee print, after the word "or," in line 19, insert the word "deceptively"; on line 21, after the word "descriptive," insert "or deceptively misdescriptive."

Thus, § 2(e)(1) and § 2(e)(2) became couched in the same language.

The Committee sent S. 895 to the full house,[29] accompanied by House Report No. 2283.[30] The proposed amendments to § 2(e) (as well as others) were approved, and S. 895, as amended, passed on September 24, 1942.[31]

In view of the extensive changes made by the House, when S. 895 returned to the Senate, it was again referred to the Senate Committee on Patents.[32] The 77th Congress ended without further action by the Senate.

H.R. 82, introduced during the 78th Congress and containing in Sections 2(e) and 2(f) the language of S. 895 as passed by the House,[33] was passed by the House on June 28, 1943.[34] In the Senate, H.R. 82 was referred to the Senate Committee on Patents where hearings were held.[35]

There was some discussion of the interrelation of § 2(a), § 2(e) and § 2(*).[36] Noting that § 2(e) was omitted from § 2(f), Mr. Moyer, Special Assistant to the Attorney General, stated: [37]

Now, under the bill, by simply using such marks, a registrant may acquire vested interest in deceptive and descriptive language, in disregard of consumer and competitor rights.

In response to Senator Pepper's questioning on this point, First Assistant Commissioner of Patents Frazer responded: [38]

Then I would say, "Go back and look at subsection (a)." No mark can be regis-

---

29. 88 Cong.Rec. 5589 (1942).

30. H.R.Rep. No. 2283, 77th Cong., 2d Sess. (1942). Proposed amendments—as discussed above—to Section 2(e) appear at page 2. Proposed amendments to Section 2(f) to change the two year period to a five year period appear at page 3. The report does not specifically discuss the proposed amendments to Section 2(e).

31. 88 Cong.Rec. 7431–37 (1942).

32. *Id.* at 7706 07 (1942).

33. H.R. 82, 78th Cong., 1st Sess., 89 Cong.Rec. 19 (1943).

34. 89 Cong.Rec. 6670–76 (1943).

35. Hearings on H.R. 82 Before a Subcomm. of the Senate Comm. on Patents, 78th Cong., 1st Sess. (1944).

36. *Id.* at 134–38.

37. *Id.* at 136.

38. *Id.* at 137.

tered which consists of immoral, deceptive or scandalous matter.

A witness from the private sector also stated: [39]

> In no event could that [§ 2(f)] include a deceptive mark, as Mr. Frazer has pointed out, because that is included in section (a).

In response to Senator Pepper's apparent concern that 2(a) prevented registration of only "deceptive" marks, not descriptive marks, there ensued a discussion of the acquisition of rights under the theory of "secondary meaning," the thrust of the argument being, "If it is protected in the courts, it ought to be on the register." [40] H.R. 82 did not pass the Senate.

In the 79th Congress, Congressman Lanham introduced H.R. 1654 containing the "deceptively misdescriptive" language in both 2(e)(1) and 2(e)(2).[41] The bill was passed by the House on March 5, 1945.[42]

H.R. 1654 was considered by the Senate Committee on Patents[43] which recommended its passage by the full Senate with several suggested amendments.[44] The bill, with suggested Committee amendments, passed the Senate on June 14, 1946.[45] Differences between the Senate and House versions were settled in conference.[46] H.R. 1654 became law on July 5, 1946.[47]

RICH, Judge, concurring.

I find myself in agreement with the views expressed in Judge Nies's concurring opinion as well as those in Chief Judge Markey's majority opinion and therefore join both.

**39.** *Id.*

**40.** *Id.*

**41.** H.R. 1654, 79th Cong., 1st Sess., 91 Cong. Rec. 431 (1945).

**42.** 91 Cong.Rec. 1718–25 (1945). H.R.Rep. No. 219, 79th Cong., 1st Sess. (1945), accompanied the bill to the House floor. The report does not specifically discuss Section 2(e).

**43.** S.Rep. No. 1333, 79th Cong., 2d Sess. (1946).

**44.** The Committee proposed to delete "merely" from Section 2(e)(1). S.Rep. No. 1333, supra n. 43 at 1.

**45.** 92 Cong.Rec. 6901–02 (1946).

**46.** H.R.Rep. No. 2322, 79th Cong., 2d Sess. (1946). The Senate receded from its amendment deleting "merely" in Section 2(e)(1).

**47.** Ch. 540, 60 Stat. 427. While Section 2 has been amended twice since 1946 [Pub.L.No. 87–772, § 2, 76 Stat. 769 and Pub.L.No. 93–596, 88 Stat. 1949], Section 2(e) has not been changed since its enactment.

# UNITED STATES COURT OF APPEALS

Former Fifth Circuit Cases
(Section 9(1) of Public Law 96–452–October 14, 1980)

## UNIT B

---

## DECISIONS WITHOUT PUBLISHED OPINIONS

The following cases have been decided without formal opinion prepared for publication in the permanent law reports:

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| Blue Bird Body Co. v. N. L. R. B. | 80–7703 | 4/22/82 | ENFORCED | N.L.R.B. |
| Lynn v. Austin | 80–7609 | 4/30/82 | AFFIRMED | M.D.Ga. |
| Empire 7 v. St. Paul Title | 80–7437 | 5/ 4/82 | AFFIRMED | N.D.Ga. |
| Barkley-Cupit Enter. v. Equitable | 80–7176 | 5/10/82 | AFFIRMED | N.D.Ga., 13 B.R. 86 |

# UNITED STATES COURT OF APPEALS

## Fifth Circuit

---

## DENIALS OF REHEARING EN BANC

(Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16)

Group 1—Denials where no member of the panel nor Judge in regular active service on the Court requested that the Court be polled on rehearing en banc.

Group 2—Denials after a poll requested by a member of the panel or a Circuit Judge in regular active service.

Group 3—Denials on the Court's own motion after a poll requested by a member of the panel or a Circuit Judge in regular active service.

| Title | Docket Number | Date of Denial | Citation of Panel Decision |
|---|---|---|---|
| **GROUP 1** | | | |
| Industrial Investment Development Corp. v. Mitsui Co., Ltd. | 81–2175 | 5/ 5/82 | S.D.Tex., 671 F.2d 876 |
| O'Toole v. New York Life Ins. Co. | 80–3797 | 4/29/82 | E.D.La., 671 F.2d 913 |
| Smith v. Gonzales | 80–3968 | 4/26/82 | M.D.La., 670 F.2d 522 |
| U. S. v. Dozier | 80–3927 | 5/13/82 | M.D.La., 672 F.2d 531 |
| U. S. v. Gunn | 81–1230 | 4/19/82 | W.D.Tex., 673 F.2d 1325 |
| U. S. v. Vela | 81–2062 | 4/29/82 | S.D.Tex., 673 F.2d 86 |

# UNITED STATES COURT OF APPEALS

### Fifth Circuit

---

### DECISIONS WITHOUT PUBLISHED OPINIONS

The following cases have been decided without formal opinion prepared for publication in the permanent law reports:

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * U. S. v. Rumery | 81–2430 | 4/19/82 | AFFIRMED | E.D.Tex. |
| * Western Casualty v. Evangeline Ph. | 81–3201 | 4/19/82 | AFFIRMED | W.D.La. |
| * Western Casualty v. Meleton | 81–3617 | 4/19/82 | AFFIRMED | W.D.La. |
| * Western Casualty v. Evangeline Ph. | 81–3670 | 4/19/82 | AFFIRMED | W.D.La. |
| * Christiansen v. Estelle | 82–1001 | 4/20/82 | AFFIRMED | N.D.Tex. |
| * Nichols v. Mid-Continent | 81–4316 | 4/20/82 | AFFIRMED | S.D.Miss. |
| *† Hebert v. Fed. Intermediate Credit | 81–3500 | 4/20/82 | AFFIRMED | E.D.La. |
| Texas Eastern v. Garber Bros, Inc. | 80–3698 | 4/20/82 | AFFIRMED IN PART | E.D.La., 494 F.Supp. 832 |
| * Cotton v. Dallas-Postal Workers Union | 81–1407 | 4/21/82 | AFFIRMED | N.D.Tex. |
| * Garrett v. Dept. of Treasury | 81–4322 | 4/21/82 | DISMISSED | M.S.P.B. |
| * U. S. v. Escamilla | 81–1465 | 4/22/82 | AFFIRMED | W.D.Tex. |
| * Theall v. Regan | 81–3772 | 4/26/82 | DISMISSED | W.D.La. |
| † Bennett v. Bakery | 81–2385 | 4/26/82 | AFFIRMED | S.D.Tex. |
| † Matthews v. Federal Compress | 81–4416 | 4/26/82 | AFFIRMED | N.D.Miss. |
| * U. S. v. Bates | 81–2448 | 4/26/82 | DISMISSED | E.D.Tex. |
| † Carter v. Continental Oil | 81–3349 | 4/26/82 | AFFIRMED | W.D.La. |
| Flanigan v. Webb | 81–3422 | 4/26/82 | AFFIRMED | W.D.La. |
| Woods v. Cook Industries, Inc. | 81–3496 | 4/26/82 | DISMISSED | E.D.La. |
| * Southwick v. Estelle | 81–1439 | 4/27/82 | AFFIRMED | N.D.Tex. |
| Morris v. International Systems | 81–2300 | 4/27/82 | AFFIRMED | S.D.Tex. |
| † Barnes v. Guaranty Bank | 81–1342 | 4/28/82 | AFFIRMED | N.D.Tex. |
| Fisher v. Dillard Univ. | 81–3455 | 4/28/82 | AFFIRMED | E.D.La. |
| Fisher v. Dillard Univ | 80–3752 | 4/28/82 | AFFIRMED | E.D.La. |
| McCartney v. Hughley | 81–1177 | 4/28/82 | AFFIRMED | N.D.Tex. |
| Fabsteel v. Mosher Steel | 81–2247 | 4/29/82 | REVERSED | E.D.Tex. |
| U. S. v. Ideal Baking Co. | 81–3370 | 4/29/82 | AFFIRMED | M.D.La. |
| † Gulf Machine v. M/V Sharon | 81–3210 | 4/29/82 | AFFIRMED | E.D.La. |
| † Sharon M/V | 81–3210 | 4/29/82 | AFFIRMED | E.D.La. |
| Brister v. Parish of Jefferson | 81–3504 | 4/29/82 | REMANDED | E.D.La. |
| Ralston Purina v. N. L. R. B. | 81–4336 | 4/29/82 | ENFORCED | N.L.R.B. |
| * U. S. v. Hernandez-Corona | 81–1142 | 4/29/82 | AFFIRMED | W.D.Tex. |
| Dixon v. Henderson | 80–3727 | 4/29/82 | AFFIRMED | E.D.La. |

* Fed.R.App.P. 34(a); 5th Cir. R. 18.
† Local Rule 21 case.

DECISIONS WITHOUT PUBLISHED OPINIONS—Continued

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * Ikesume v. McDermott | 81–2026 | 5/ 3/82 | VACATED | S.D.Tex. |
| † M. Shiels Hosp. v. U. S. | 81–1507 | 5/ 3/82 | AFFIRMED | N.D.Tex. |
| † Wells v. Egger | 81–2369 | 5/ 5/82 | AFFIRMED | S.D.Tex. |
| Hines v. Norman Industries | 81–3182 | 5/10/82 | AFFIRMED | E.D.La. |
| *† Hong Chang Hsu v. Allseas Maritime | 81–2292 | 5/10/82 | AFFIRMED | S.D.Tex. |
| † U. S. v. Anderson | 81–2388 | 5/10/82 | AFFIRMED | E.D.Tex. |
| * Wade v. Am. Bk. & Trust | 81–1505 | 5/10/82 | AFFIRMED | N.D.Tex. |
| Curtis v. Southwestern Newspapers | 81–1322 | 5/12/82 | AFFIRMED | N.D.Tex. |
| * U. S. v. Young | 81–1428 | 5/12/82 | AFFIRMED | N.D.Tex. |
| * Waddell v. Stone & Webster | 81–3613 | 5/12/82 | AFFIRMED | M.D.La. |
| * Yates v. Maggio | 81–3783 | 5/12/82 | AFFIRMED | E.D.La. |
| * U. S. v. Anderson | 81–2480 | 5/14/82 | AFFIRMED | E.D.Tex. |
| * Mitchell v. Beaubouef | 81–3206 | 5/14/82 | AFFIRMED | M.D.La. |
| * Maxwell v. Estelle | 81–1555 | 5/14/82 | AFFIRMED | W.D.Tex. |

* Fed.R.App.P. 34(a); 5th Cir. R. 18.
† Local Rule 21 case.

# UNITED STATES COURT OF APPEALS

## Eleventh Circuit

---

### DECISIONS WITHOUT PUBLISHED OPINIONS

The following cases have been decided without formal opinion prepared for publication in the permanent law reports:

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * ** Menendez v. Wainwright | 81–5294 | 4/19/82 | AFFIRMED | M.D.Fla. |
| * ** U. S. v. Lynn | 81–5733 | 4/19/82 | AFFIRMED | N.D.Fla. |
| * Dailey v. Boykin | 81–7505 | 4/19/82 | REVERSED | S.D.Ala. |
| ** U. S. v. Florian | 81–5171 | 4/20/82 | AFFIRMED | S.D.Fla. |
| ** U. S. v. Schwartz | 81–5375 | 4/20/82 | AFFIRMED | M.D.Fla. |
| * Burks v. Veteran Administration | 81–7776 | 4/20/82 | AFFIRMED | N.D.Ga. |
| U. S. v. Pett | 81–5267 | 4/21/82 | AFFIRMED | N.D.Fla. |
| * Oakley v. Credithrift of America | 81–7813 | 4/21/82 | AFFIRMED | N.D.Ga. |
| ** Bahamas v. Commercial-Air | 81–5516 | 4/22/82 | AFFIRMED | S.D.Fla. |
| Alvarez v. Wainwright | 81–5858 | 4/22/82 | AFFIRMED | M.D.Fla. |
| ** U. S. v. Piniero | 80–5484 | 4/26/82 | AFFIRMED | S.D.Fla. |
| ** U. S. v. Menchero | 80–5530 | 4/26/82 | AFFIRMED | S.D.Fla. |
| * Scuirba v. Naval Air Rework | 81–5779 | 4/26/82 | REVERSED | M.D.Fla. |
| * Apel v. Wainwright | 81–5795 | 4/26/82 | DISMISSED | M.D.Fla. |
| * ** Dunn v. U. S. | 81–7633 | 4/26/82 | AFFIRMED | N.D.Ala. |
| * Rushing v. Townshead | 81–7690 | 4/27/82 | AFFIRMED IN PART | N.D.Ala. |
| * Dollar v. Thomas | 81–7950 | 4/27/82 | AFFIRMED | M.D.Ga. |
| ** U. S. v. Archibong | 81–7501 | 4/28/82 | AFFIRMED | N.D.Ga. |
| ** U. S. v. Bloodworth | 81–5301 | 4/29/82 | AFFIRMED | M.D.Fla. |
| U. S. v. Paulk | 81–7478 | 4/29/82 | REVERSED | S.D.Ga. |
| * Story v. First Federal Savings | 81–5820 | 4/30/82 | DISMISSED | S.D.Fla. |
| * Kele v. Hanberry | 81–7744 | 4/30/82 | AFFIRMED | N.D.Ga. |
| * Hill v. Schweiker | 81–7980 | 4/30/82 | AFFIRMED | N.D.Ala. |
| * ** U. S. v. Little | 81–5092 | 5/ 4/82 | AFFIRMED | N.D.Fla. |
| * ** U. S. v. Ramos | 81–5429 | 5/ 4/82 | AFFIRMED | S.D.Fla. |
| * U. S. v. Townsend | 81–5616 | 5/ 4/82 | AFFIRMED | M.D.Fla. |
| * Grace v. Wainwright | 81–5653 | 5/ 4/82 | AFFIRMED | N.D.Fla. |
| * Baecher v. I. N. S. | 81–5980 | 5/ 4/82 | REVERSED | I.N.S. |
| Law v. I. R. S. | 81–7334 | 5/ 4/82 | AFFIRMED | D.Ga. |
| * ** Craig v. Arrington | 81–7497 | 5/ 4/82 | AFFIRMED | N.D.Ala. |
| * Elder v. Connors Steel Co. | 81–7743 | 5/ 4/82 | AFFIRMED | N.D.Ala. |
| U. S. v. McConnell | 81–7423 | 5/ 5/82 | VACATED | N.D.Ga. |
| Martin v. Schweiker | 81–7299 | 5/10/82 | REVERSED | N.D.Ala. |
| * U. S. v. Pickle | 81–7825 | 5/10/82 | AFFIRMED | N.D.Ala. |
| * Genkinger v. F. A. A. | 81–5001 | 5/14/82 | AFFIRMED | F.A.A. |

* Fed.R.App.P. 34(a); 11th Cir. R. 23.
** Local Rule: 25 case.

# UNITED STATES COURT OF APPEALS

## Eleventh Circuit

---

### DENIALS OF REHEARING EN BANC

(Rule 35 Federal Rules of Appellate Procedure; Local Eleventh Circuit Rule 26)

Group 1—Denials where no member of the panel nor Judge in regular active service on the Court requested that the Court be polled on rehearing en banc.

Group 2—Denials after a poll requested by a member of the panel or a Circuit Judge in regular active service.

Group 3—Denials on the Court's own motion after a poll requested by a member of the panel or a Circuit Judge in regular active service.

| Title | Docket Number | Date of Denial | Citation of Panel Decision |
|---|---|---|---|
| **GROUP 1** | | | |
| Buchanon v. Macon County Bd. of Ed. | 81–7185 | 3/22/82 | M.D.Ala., 670 F.2d 185 |
| Chrysler Credit Corp. v. J. Truett Payne Co., Inc. | 77–2331 | 4/26/82 | N.D.Ala., 670 F.2d 575 |
| Coastal Petroleum Co. v. American Cyanamid Co. | 81–6061 | 5/12/82 | N.D.Fla., 673 F.2d 1343 |
| Fowler v. U. S. Patent Office | 81–5438 | 5/13/82 | M.D.Fla., 673 F.2d 1343 |
| J. Truett Payne Co., Inc. v. Chrysler Motors Corp. | 77–2331 | 4/26/82 | N.D.Ala., 670 F.2d 575 |
| Mylar v. State of Alabama | 81–7412 | 4/29/82 | N.D.Ala., 671 F.2d 1299 |
| N. L. R. B. v. Howard Johnson Co. | 81–7437 | 4/19/82 | N.D.Ga., 671 F.2d 1383 |
| U. S. v. Brock | 80–5621 | 5/14/82 | S.D.Fla., 669 F.2d 655 |
| U. S. v. Hobson | 82–5138 | 5/12/82 | N.D.Fla., 672 F.2d 825 |
| U. S. v. Patrick | 81–5390 | 5/12/82 | M.D.Fla., 673 F.2d 1343 |