# United States Court of Appeals for the Federal Circuit

---

**IN RE THE NEWBRIDGE CUTLERY COMPANY**
**(trading as Newbridge Silverware)**

---

2013-1535

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Serial No. 79094236.

---

Decided: January 15, 2015

---

PHILIP RAIBLE, Rayner Rowe LLP, of New York, New York, argued for appellant.

NATHAN K. KELLEY, Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were CHRISTINA J. HIEBER and THOMAS L. CASAGRANDE, Associate Solicitors.

---

Before PROST, *Chief Judge,* LINN, and HUGHES, *Circuit Judges.*

LINN, *Circuit Judge.*

The Newbridge Cutlery Company (the "applicant") appeals from the decision of the Trademark Trial and Appeal Board (the "Board") affirming the Trademark Examiner's refusal to register applicant's NEWBRIDGE

HOME mark as being primarily geographically descriptive. *See In re The Newbridge Cutlery Co. T/A Newbridge Silverware*, Serial No. 79094236, *available at* 2013 WL 3001454 (T.T.A.B. Apr. 29, 2013) (*"Board's Decision"*). Because substantial evidence fails to support the Examiner's refusal, we reverse and remand.

BACKGROUND

Applicant is an Irish company headquartered in Newbridge, Ireland, that designs, manufactures and sells housewares, kitchen ware and silverware in the United States and elsewhere around the world under the mark NEWBRIDGE HOME. Applicant designs its products in Newbridge, Ireland, and manufactures some, but not all, of its products there. *See id.* at \*2. In the United States, its products are available for sale through its website and through retail outlets that feature products from Ireland. *See id.* at \*4.

The NEWBRIDGE HOME mark is the subject of International Registration No. 1068849, which was filed through the International Bureau of the World Intellectual Property Organization. Applicant sought protection of the mark in the United States pursuant to the Madrid Agreement and Madrid Protocol, under each of which the United States Patent and Trademark Office ("PTO") examines international registrations for compliance with United States law. 15 U.S.C. § 1141 (2012). In so doing, applicant disclaimed the word HOME apart from the mark as a whole in the application. *See Board's Decision* at \*1 n.1. Applicant sought registration for various listed items of silverware, jewelry, desk items and kitchenware. *See id.* at \*1.

The Trademark Examiner refused to register the mark as being primarily geographically descriptive when applied to applicant's goods under 15 U.S.C. § 1052(e)(2) (2012). *Id.* The Board affirmed, concluding that Newbridge, Ireland, is a generally known geographic place

and the relevant American public would make an association between applicant's goods and Newbridge, Ireland. *Id.* at *6.

The Newbridge Cutlery Company appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2012).

ANALYSIS

I. Standards of Review

The Board's interpretation of the Lanham Act is reviewed de novo. *See In re Cal. Innovations, Inc.*, 329 F.3d 1334, 1336 (Fed. Cir. 2003). "Whether a mark is primarily geographically descriptive . . . is a question of fact." *In re Compagnie Generale Mar.*, 993 F.2d 841, 845 (Fed. Cir. 1993). The Board's factual findings are reviewed for substantial evidence. *Cal. Innovations*, 329 F.3d at 1336.

II. 15 U.S.C. § 1052(e)

There have been few decisions by this court dealing with primarily geographically descriptive marks. We last discussed such marks in detail nearly thirty years ago. *See In re Societe Generale Des Eaux Minerales De Vittel S.A.*, 824 F.2d 957 (Fed. Cir. 1987). To give context to our analysis, we begin with a discussion of the evolution of the current statutory framework.

A.

In various circumstances, geographical names have long been refused trademark protection in the United States. *See, e.g.*, *Delaware & Hudson Canal Co. v. Clark*, 80 U.S. 311, 324 (1871). The Trademark Act enacted in 1905 prohibited registering any mark that was "merely a geographical name or term." Act of Feb. 20, 1905, ch. 592, 33 Stat. 724, 726 (repealed 1946); 15 U.S.C. § 85 (1940).

In interpreting this phrase, the Patent Office (now the PTO), with the blessing of the courts, would reject applications upon a showing that a mark was a geographical

name, independent of any consumer recognition of the name. For instance, in *In re Kraft-Phenix Cheese Corp.*, the Court of Customs and Patent Appeals affirmed a rejection of CHANTELLE, a town in France, for cheese stating:

> [T]he fact that the town is little known in this country does not change the situation. The statute, in prohibiting the registration of geographical terms made no exemption in favor of those which lacked importance or of those which were not well known by the people in this country. The Patent Office and the courts are not privileged to read unwarranted exemptions into the act.

120 F.2d 391, 392 (C.C.P.A. 1941) (citing cases); *see also In re Nisley Shoe Co.*, 58 F.2d 426, 427 (C.C.P.A. 1932) (explaining that the analogous provision preventing registration of a mark "which consists merely in the name of an individual," 15 U.S.C. § 85 (1940), "makes no exception in the case of uncommon or rare names"). *See generally* 2 J.T. McCarthy, Trademarks & Unfair Competition § 14:27 (4th ed. 2014) ("McCarthy"). The policy rationale for refusing to register such marks was that allowing such registration would preempt other merchants from the named location from identifying the origin of their own goods. *See, e.g.*, *In re Plymouth Motor Corp.*, 46 F.2d 211, 213 (C.C.P.A. 1931) ("a geographical name or term, by which is meant a term denoting locality, cannot be exclusively appropriated as a trade-mark because such a term is generic or descriptive, and any one who can do so truthfully is entitled to use it" (internal quotations omitted)), *overruled on other grounds by In re Canada Dry Ginger Ale*, 86 F.2d 830, 833 (C.C.P.A. 1936); *accord Canada Dry*, 86 F.2d at 831 (quoting *Delaware & Hudson Canal*, 80 U.S. at 324).

In 1938, Congressman Lanham proposed major amendments to the Trademark Act. *See* H.R. 9041, 75th

Cong. (3rd Sess.) (Jan. 19, 1938). With regard to geographical marks, he originally proposed prohibiting the registration of any mark that "has merely a descriptive or geographical meaning," *id.* § 3(e), thus keeping the law of geographic marks essentially unchanged. In discussing this section, Mr. Edward S. Rogers, "who played a significant role in drafting the Lanham Act," *In re Nantucket, Inc.*, 677 F.2d 95, 107 (C.C.P.A. 1982) (Nies, J., concurring) (citing S.P. Ladas, *The Contribution of Edward S. Rogers in the Int'l Field of Industrial Property*, 62 Trademark Rep. 197 (1972)[1]), claimed that the 1905 statute, preventing registration on "merely geographical names," was "very troublesome." Hearings on H.R. 9041 Before the Subcomm. On Trade-marks of the House Comm. on Patents, 75th Cong., 3rd Sess. at 71 (1938). According to Mr. Rogers:

> The present construction of the Patent Office of that language is that they take a word without reference to its connotation, and if it appears in the atlas anywhere as the name of a place, or if it appears in the Postal Guide they say that is a geographical name or term, and hence is not registrable.

*Id.* at 71–72. The next year, Congressman Lanham proposed an amended bill that would prevent registration for "a mark which, when applied to the goods of the applicant, has merely a descriptive or geographical, *and no other, meaning*." H.R. 4744, 76th Cong. (1st Sess.) § 2(e) (Mar. 3, 1939) (emphasis added). In discussing this language, Mr. Rogers reiterated the problem of where to draw the line on the registrability of geographical names,

---

[1] Judge Nies may have meant to reference W.J. Derenberg, *The Contribution of Edward S. Rogers to the Trademark Act of 1946 in Historical Perspective*, 62 Trademark Rep. 189 (1972), which is more on point.

and suggested amending the statute to prevent registration of marks, which, "when applied to the goods of the applicant, [are] primarily geographical *and* descriptive of them." Hearings on H.R. 4744 before the Subcomm. on Trade-Marks of the House Comm. on Patents, 76th Cong., 1st Sess. 19 (Mar. 28, 1939) (emphasis added). The next day, at the behest of Congressman Lanham, Mr. Rogers read into the record an amended version of this section, which, *inter alia*, would prevent registration of a mark which, "[w]hen applied to the goods of the applicant is primarily geographically descriptive of them." *See id.* at 39 (Mar. 29, 1939). When Congressman Lanham reintroduced the bill later that year, he used this language, *see* H.R. 6618, 76th Cong. (1st Sess.) § 2(e) (June 1, 1939), and this language survived in the statute as enacted. In addition, the statute was subsequently amended to also refuse registration for primarily geographically deceptively misdescriptive marks. *See Nantucket*, 677 F.2d at 108–11 (Nies, J., concurring) (describing this legislative history).

Thus, in the Lanham Act, section 1052(e) instructed the PTO to refuse to register a mark if, "when applied to the goods of the applicant it is primarily geographically descriptive or deceptively misdescriptive of them." § 1052(e)(2) (1946). Both primarily geographically descriptive and deceptively misdescriptive marks could be registered, however, if they acquired distinctiveness. *See id.* § 1052(f). In sum:

> "The 1946 Lanham Act steered away from the prior practice of looking a word up in an atlas or gazetteer and then refusing registration if there was any place on earth called by that word."

*In re Jacques Bernier, Inc.*, 894 F.2d 389, 391 (Fed. Cir. 1990) (quoting 1 McCarthy § 14:10, at 647 (2d. ed. 1984))[2] (internal ellipses removed).  Thus, while the genesis of the refusal to register geographical names was to prevent a first registrant from preempting all other merchants from identifying the source of their goods, the focus of the 1946 Lanham Act moved to a more nuanced restriction that considered the primary significance of the mark when applied to the goods.

Congress later replaced the phrase "when applied to the goods of the applicant" with "when used on or in connection with the goods of the applicant."  15 U.S.C. § 1052(e)(2) (1988).  The legislative history of these revisions explains that these changes were "not substantive and [were] not intended to change the law."  S. Rep. No. 100-515, at 22, *reprinted in* 1988 U.S.C.C.A.N. 5577, 5584 (discussing the identical amendments in § 1051); *id.* at 27, 1988 U.S.C.C.A.N. at 5590 (analogizing the § 1051 and § 1052(e) amendments).

Finally, in 1993, following the United States' entry into the North American Free Trade Agreement, Dec. 17, 1992, art. 1712, 32 I.L.M. 605 (hereinafter "NAFTA"), § 1052(e) was amended to essentially its current form, in which primarily geographically descriptive marks and primarily geographically deceptively misdescriptive marks are divided into two subsections, (e)(2) and (e)(3), respectively, with the latter now foreclosed from registration even if acquired distinctiveness is shown.  *See* 15 U.S.C. § 1052(f) (2012).  The legislative history of the 1993 NAFTA amendments explains that "[t]he law as it relates to 'primarily geographically descriptive' marks would remain unchanged."  139 Cong. Rec. 30,237 (1993), *quoted in Cal. Innovations*, 329 F.3d at 1339–40.

---

[2]    The most recent edition includes this discussion at 2 McCarthy § 14:27 (4th ed. 2014).

While the 1993 amendments have now foreclosed registration of geographically deceptively misdescriptive marks, they made no distinction, in geographical significance, between geographically descriptive marks and geographically deceptively misdescriptive marks. Under the statute, it is clear that refusal to register extends under both subsections (e)(2) and (e)(3) only to those marks for which the geographical meaning is perceived by the relevant public as the *primary* meaning and that the geographical significance of the mark is to be assessed as it is used *on or in connection with the goods*.

## B.

This court's predecessor provided considerable guidance in interpreting the statutory language relating to primarily geographical marks in *Nantucket*, a pre-NAFTA case dealing with primarily geographically deceptively misdescriptive marks. *See* 677 F.2d 95. The PTO rejected the mark NANTUCKET for shirts because it considered the mark primarily geographically deceptively misdescriptive, as the "term NANTUCKET has a readily recognizable geographic meaning, and no alternative non-geographic significance." *Id.* at 97 (quoting *Nantucket*, 209 U.S.P.Q. 868, 871 (T.T.A.B. 1981)) (internal citations removed). The Court of Customs and Patent Appeals reversed, concluding that there was no showing of an association in the public's mind between the place, i.e., Nantucket, and the marked goods, i.e., the shirts. *See id.* at 101. The court explained:

> "The wording of [§ 1052(e)] makes it plain that not all terms which are geographically suggestive are unregistrable. Indeed, the statutory language declares nonregistrable only those words which are 'primarily geographically descriptive.' The word 'primarily' should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is

> minor, obscure, remote, or unconnected with the goods. Thus, if there be no connection of the geographical meaning of the mark with the goods in the public mind, that is, if the mark is arbitrary when applied to the goods, registration should not be refused under § 2(e)(2)."

*Id.* at 99 (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486 (5th Cir. 1971)) (emphasis and internal citations omitted).

*Nantucket*'s requirement that the mark be "connected" with the goods flowed, in part, from the statutory requirement that the mark has to be primarily geographically descriptive or deceptively misdescriptive "when applied to the goods of the applicant." *Id.* at 98; *In re Loew's Theatres, Inc.*, 769 F.2d 764, 767 (Fed. Cir. 1985). The rationale for allowing registration of marks that relevant consumers do not view as primarily geographic is that the consumer would consider such marks "arbitrary." *Nantucket*, 677 F.2d at 100 n.8 (quoting Restatement (First) of Torts § 720 cmt. d). *See also* Restatement (First) of Torts § 720 cmt. c (expounding on the rationale). That the phrase "when applied to the goods of the applicant" was replaced, in 1988, with the phrase "when used on or in connection with," did not change the law. *Nantucket*'s interpretation of § 1052(e) is bolstered by the legislative history, which indicates that this section was introduced to eliminate rejections of geographical trademarks made without reference to their connotations to consumers in association with the goods or services for which the marks are used.

Since *Nantucket*, this court has set out specific requirements for determining whether a mark is primarily geographically descriptive or primarily geographically deceptively misdescriptive. As the statute uses the phrase "primarily geographically" in both the descriptive and deceptively misdescriptive subsections, this court's

decisions relating to one subsection inform the meaning of the other and make clear that to refuse registration under either subsection the Trademark Examiner must show that: (1) "the mark sought to be registered is the name of a place known generally to the public," *Vittel*, 824 F.2d at 959, and (2) "the public would make a goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place." *Id. Accord In re Miracle Tuesday, LLC*, 695 F.3d 1339, 1343 (Fed. Cir. 2012) (describing analogous factors for primarily geographically deceptively misdescriptive marks) (citing *Cal. Innovations*, 329 F.3d at 1341).

To refuse registration of a mark as being primarily geographically descriptive, the PTO must also show that (3) "the source of the goods is the geographic region named in the mark." *Bernier*, 894 F.2d at 391. *Accord* Trademark Manual of Examining Procedure ("TMEP") § 1210.01(a). In applying prongs (1) and (2) of this test, our precedent establishes that the relevant public is the purchasing public in the United States of these types of goods. As we made clear in *Vittel*, "we are not concerned with the public in other countries." *Vittel*, 824 F.2d at 960. *Accord Institut National Des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 1580–81 (Fed. Cir. 1992).

Regarding the first prong of the test, that the population of the location is sizable and/or that members of the consuming public have ties to the location (to use the example in *Loew's*: that Durango, Mexico, would be recognized by "the Mexican population of this country") is evidence that a location is generally known. *See Loew's*, 769 F.2d at 766, 768. By contrast, that the geographic meaning of a location is "minor, obscure [or] remote" indicates that the location is not generally known. *See Nantucket*, 677 F.2d at 99 (internal quotations omitted). Of course, there are many probative factors to the ques-

tion of whether a location is generally known, and these are just a few examples.

In establishing the goods/place association required by the second prong of the test, we have explained that the PTO only needs to show "a *reasonable predicate* for its conclusion that the public would be *likely* to make the particular goods/place association on which it relies." *Miracle Tuesday*, 695 F.3d at 1344 (quoting *In re Pacer Tech.,* 338 F.3d 1348, 1351 (Fed. Cir. 2003) (itself quoting *Loew's*, 769 F.2d at 768)) (emphasis in *Pacer*). It need not show an "actual" association in consumers' minds. *Id.* (citing *Pacer*, 338 F.3d at 1351). A goods/place association can be shown even where the location is not "'well-known'" or "'noted'" for the relevant goods. *Cal. Innovations*, 329 F.3d at 1338 (quoting *Loew's*, 769 F.2d at 767). If the Trademark Examiner establishes such a *prima facie* case, an applicant may rebut this showing with evidence "that the public would not actually believe the goods derive from the geographic location identified by the mark." *In re Save Venice New York, Inc.*, 259 F.3d 1346, 1354 (Fed. Cir. 2001).

The PTO has long held that where: (1) a location is generally known; (2) the term's geographic significance is its primary significance; and (3) the goods do, in fact, originate from the named location, a goods/place association can be presumed. *See, e.g.*, *In re Handler Fenton Westerns, Inc.*, 214 U.S.P.Q. 848, 849 (T.T.A.B. 1982); *Board's Decision* at *3 (citing cases); TMEP § 1210.04 (citing cases); *see also Nantucket*, 677 F.2d at 102 (Nies, J., concurring) ("[W]e must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business. There is a public goods/place association, in effect, presumed." (internal footnote removed)). This presumption may well be proper, but, as this case can be decided on other grounds, we do not address its propriety and leave it for another day.

### III.  The Examiner's Refusal

The Examiner found that the primary significance of the word "Newbridge" is a "generally known geographic place," i.e., Newbridge, Ireland, and that the goods originated there.  The Examiner then applied the TMEP's presumption that a goods/place association existed.  The word "home," according to the Examiner, was "generic or highly descriptive" and, therefore, did not affect the geographic significance of the term.  Accordingly, the Examiner rejected the mark under § 1052(e)(2).

There is no dispute that applicant's goods are made in Newbridge, Ireland.  Additionally, applicant does not contend that the presence of the term "home" in the mark affects whether the mark is primarily geographically descriptive.  Accordingly, the question before us is whether "Newbridge" is primarily geographically descriptive when used on or in connection with applicant's goods.

### A.  Primary Significance of NEWBRIDGE

The Board concluded that Newbridge, Ireland, is a place known generally to the public because it is (1) the second largest town in County Kildare and the seventeenth largest in the Republic of Ireland; (2) it is listed in the *Columbia Gazetteer of the World*; and (3) it appears on a number of websites including Wikipedia and tourism websites that advertise the location as "a large commercial town" with a "silverware visitor centre" in addition to museums, gardens, historical and battle sites, and a famous horse racing track.  *Board's Decision* at *3.

Applicant argues that the relevant purchasing public would not be aware of the sources cited by the Board.  Applicant also claims that Newbridge, Ireland, is not generally known to the relevant public as the name of a place based on the fact that the word "newbridge" has other, non-geographic meanings that would be more significant to an American consumer and that there are

"several geographic locations called 'Newbridge.'" Applicant also claims that Newbridge, Ireland, "is not found in commonly available political maps of Ireland on the internet" and that the PTO has registered other marks with the term "Newbridge." The PTO responds that Newbridge is a town in Ireland from which applicant takes its name and from which applicant's products actually originate. According to the PTO, this (1) distinguishes applicant's situation from those in which others have registered the mark and (2) indicates the mark's geographic significance irrespective of what other meanings and connotations the mark might have in the abstract. Finally, at oral argument, the solicitor implied that in this day and age, where the average American consumer has instant internet access, a location is generally known if the existence of the location can be reasonably found on the internet. *See* Oral Argument at 25:05–28:20, *Newbridge*, 2013-1535 (Fed. Cir. July 10, 2014), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1535.mp3.

The conclusion that Newbridge, Ireland, a town of less than twenty thousand people, is a place known generally to the relevant American public is not supported by substantial evidence. That Newbridge is the second largest town in County Kildare and the seventeenth largest in the Republic of Ireland reveals nothing about what the relevant American purchaser might perceive the word "Newbridge" to mean and is too insignificant to show that Newbridge is a place known generally to the American purchasing public. Similarly, while the Board relied on the *Columbia Gazetteer of the World* listing, what is missing is any evidence to show the extent to which the relevant American consumer would be familiar with the locations listed in this gazetteer.

Likewise, the fact that Newbridge, Ireland, is mentioned on some internet websites does not show that it is a generally known location. The internet (and websites

such as Wikipedia) contains enormous amounts of information: some of it is generally known, and some of it is not. *Cf. In re Bavaria St. Pauli Brauerie AG*, 222 U.S.P.Q. 926, 928 (T.T.A.B. 1984) ("there are dozens of other place names on the same page of the gazetteer that are likewise devoid of significance as places which any substantial quantity of American purchasers would associate with any particular products"). There is simply no evidence that the relevant American consumer would have any meaningful knowledge of all of the locations mentioned in the websites cited by the PTO.

Further, it is simply untenable that any information available on the internet should be considered known to the relevant public. The fact that potential purchasers have enormous amounts of information instantly available through the internet does not evidence the extent to which consumers of certain goods or services in the United States might use this information to discern the primary significance of any particular term. Neither is a place necessarily "generally known" just because a purchaser is informed that the name of the mark is the name of the place. In *Vittel*, we approvingly cited a Board decision that allowed registration of the mark AYINGER BIER for beer, even though the mark was present on the label and "in picture and words, show[ed] the brewery to be located in Aying." *Vittel*, 824 F.2d at 960 (citing *In re Brauerei Aying Franz Inselkammer Kg*, 217 U.S.P.Q. 73 (T.T.A.B. 1983)). Of course, a potential purchaser of this beer would, seeing the label, learn of the existence of Aying (and learn that this was the origin of the beer). Nevertheless, Aying, Germany, was considered obscure for the purposes of § 1052(e)(2).

To be clear, we do not foreclose the PTO from using gazetteer entries or internet websites to identify whether a location is generally known. *See In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007). For example, we have credited gazetteer entries as part of the

evidence used to establish that Durango, Mexico, was generally known. *See Loew's*, 769 F.2d at 766 n.3. But the gazetteer showing was just one piece of evidence that together with other evidence was sufficient to establish a *prima facie* case that Durango is known generally to the relevant public. *See id.* at 768. Gazetteer entries and internet websites are valuable for the information they provide. But the mere entry in a gazetteer or the fact that a location is described on the internet does not necessarily evidence that a place is known generally to the relevant public. *See Vittel*, 824 F.2d at 959 ("In dealing with all of these questions of the public's response to word symbols, we are dealing with the supposed reactions of a segment of the American public, in this case the mill-run of cosmetics purchasers, not with the unusually well-travelled, the aficionados of European watering places, or with computer operators checking out the meaning of strange words on NEXIS.").

We have also considered the PTO's evidence in toto and find that it likewise is not substantial evidence for the proposition that, to the relevant public, Newbridge, Ireland, is generally known. That Newbridge, Ireland, is not generally known is supported by the fact that certain maps and atlases do not include it. That "Newbridge" has other meanings, both geographical and non-geographical, also makes it less likely that Newbridge, Ireland, is generally known as the name of a place. On the other hand, the fact that the PTO has registered "newbridge" in contexts where the goods did not originate from Newbridge is not particularly probative since the PTO may have found no goods/place association in those contexts and, in any event, "decisions regarding other registrations do not bind either the agency or this court." *In re Boulevard Entm't, Inc.*, 334 F.3d 1336, 1343 (Fed. Cir. 2003) (citing *In re Nett Designs*, 236 F.3d 1339, 1342 (Fed. Cir. 2001).

In sum, the facts here are similar to those of the Board's decision in *Bavaria*, which we cited approvingly in *Vittel*, which held that Jever, West Germany, a town of 10,342, was not generally known, despite being mentioned in a geographical index. *Vittel*, 824 F.2d at 960 (citing *Bavaria*, 222 U.S.P.Q. 926). Here, as in *Bavaria*, the evidence as a whole suggests that Newbridge, Ireland, is not generally known. Thus, to the relevant public the mark NEWBRIDGE is not *primarily* geographically descriptive of the goods, which is what matters. *See, e.g.*, *Nantucket*, 677 F.2d at 100 n.8 ("public association is determinative of arbitrariness"). Prong one of the test for primarily geographically descriptive marks is therefore not met. Accordingly, we need not and do not separately consider whether a goods/place association exists.

## CONCLUSION

For the foregoing reasons, we reverse the Board's refusal to register applicant's mark under § 1052(e)(2) and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**