This Opinion is a
Precedent of the TTAB

Mailed: February 22, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

⎯⎯

Trademark Trial and Appeal Board

⎯⎯

*In re Broken Arrow Beef and Provision, LLC*

⎯⎯

Serial No. 87334198

⎯⎯

Michael B. Bressman TMCP-VAN of Vanderbilt Legal Clinic,
    for Broken Arrow Beef and Provision, LLC.

Daniel Stringer, Trademark Examining Attorney, Law Office 103,
    Stacy Wahlberg, Managing Attorney.

⎯⎯

Before Bergsman, Hightower, and Larkin,
    Administrative Trademark Judges.

Opinion by Larkin, Administrative Trademark Judge:

Broken Arrow Beef and Provision, LLC ("Applicant"), a limited liability company located in Broken Arrow, Oklahoma, seeks registration on the Principal Register of the mark BA BEEF in standard characters for "beef; flavored nuts; frozen fish; pork; poultry; preserved fish; processed pecans; seasoned nuts; chicken," in International Class 29.[1]

---

[1] Application Serial No. 87334198 was filed on February 13, 2017 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intention to use the mark in commerce. Applicant has disclaimed the exclusive right to use BEEF apart from the mark as shown.

The Trademark Examining Attorney has refused registration under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2), on the ground that the proposed mark is primarily geographically descriptive of the goods identified in the application. When the refusal was made final, Applicant appealed and requested reconsideration, 4 TTABVUE, which was denied. 5-11 TTABVUE. The appeal is fully briefed. We reverse the refusal to register.

Section 2(e)(2) of the Trademark Act prohibits the registration on the Principal Register of a mark which "when used on or in connection with the goods of the applicant is primarily geographically descriptive of them," 15 U.S.C. § 1052(e)(2), unless the mark has acquired distinctiveness under Section 2(f) of the Act, 15 U.S.C. § 1052(f). To refuse registration of a mark on the ground that it is primarily geographically descriptive, the USPTO must show three things:

> (1) the mark sought to be registered is the name of a place known generally to the public, (2) the public would make a goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place, [and] (3) the source of the goods is the geographic region named in the mark.

*In re Newbridge Cutlery Co.*, 776 F.3d 854, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015) (internal quotations and citations omitted). The "relevant public is the purchasing public in the United States of [the] types of goods" identified in the involved application, *id.* at 1449, and in this case, we focus on beef, as that is the focus of the mark.[2]

---

[2] The identification of goods here covers multiple food products. The Examining Attorney states that the "refusal has not been limited to any particular goods and applies to the entirety of the application" because a "descriptiveness refusal is proper if the mark is

Applicant and the Examining Attorney discuss at length the extensive evidence of record on all three elements of the geographic descriptiveness test, but we need not do so to resolve this appeal because we find that the Examining Attorney has failed to establish that the letters "BA" in the applied-for mark BA BEEF is the name of a place known generally to the beef-purchasing public in the United States. *See id.* at 1451 (reversing Board's finding that NEWBRIDGE HOME was primarily geographically descriptive for various goods made in Newbridge, Ireland because of lack of substantial evidence that Newbridge is the name of a place generally known to the public, which made it unnecessary to "separately consider whether a goods/place association exists"); *In re Trans Cont'l Records, Inc.*, 62 USPQ2d 1541, 1544 (TTAB 2002) (reversing requirement for a disclaimer of O-TOWN in the mark O-TOWN RECORDS INCORPORATED and design because the examining attorney failed to show that O-TOWN would be perceived as a geographic reference to Orlando, Florida, which made "the fact that the Examining Attorney has demonstrated a goods/place association between applicant's goods and services and the city of Orlando, Florida . . . of no moment").

As noted above, to prove the first element of geographic descriptiveness, the Examining Attorney must show that the "BA" portion of the mark BA BEEF identifies "a place known generally to the relevant American public." *Newbridge*

---

descriptive of any of the goods or services for which registration is sought." 15 TTABVUE 15 n.1 (citing *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) and *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005) (internal punctuation omitted)). Both the Examining Attorney and Applicant focus on beef, however, so the relevant purchasing public may be limited to beef purchasers in the United States without affecting the outcome on this appeal.

*Cutlery*, 113 USPQ2d at 1450; *see also In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987). The Examining Attorney argues that "commonly used nicknames for geographic locations are generally treated as equivalent to the proper geographic name of the place identified," and that "the acronym 'BA' is commonly used as an abbreviation for Broken Arrow, Oklahoma." 15 TTABVUE 5. He points to uses of "BA" as an abbreviation for "Broken Arrow" on websites, in various printed materials, and elsewhere in the record, and claims that these uses "demonstrate that the primary significance of the abbreviation 'BA' is a generally known geographic place or location." *Id*.

Applicant counters that "the average American beef consumer would not likely associate the initials BA with any geographic location, including Broken Arrow," and that "[a]lthough some local residents may refer to Broken Arrow as BA, the relevant beef consuming public outside of the Broken Arrow region does not." 13 TTABVUE 8. Applicant argues that there are multiple meanings of the letters "BA" other than as an abbreviation for "Broken Arrow," *id*. at 11, and that "neither the average American beef consumer nor even the average American consumer would associate BA with Broken Arrow, Oklahoma." *Id*. Applicant dismisses the uses of BA as an abbreviation for Broken Arrow because they "at best, show that local residents in the Broken Arrow area sometimes refer to Broken Arrow as BA." *Id*. at 13. Applicant concludes that a "beef consumer in Kansas City or Washington, D.C. confronted with a BA BEEF label on a package of beef would not know what BA meant," and that in that "consumer's mind, it might be Buenos Aires beef, Big Al's beef, Best Anywhere beef,

British Airways beef, Bay Area beef, or simply BA (pronounced 'bah' or 'bay') beef." *Id.* at 12 (footnote omitted).

In determining whether the letters "BA" in the applied-for mark BA BEEF cause the mark as a whole to identify a place known generally to the relevant American public, we find instructive the Board's analysis in *Trans Cont'l Records,* in which the Board considered a refusal to register the mark shown below



without a disclaimer of "O-TOWN" on the basis of the "Examining Attorney's position that O-TOWN is geographically descriptive of the identified goods and services because it is a nickname for the city of Orlando, Florida." 62 USPQ2d at 1542. In support of the refusal, the examining attorney submitted articles from the NEXIS database that showed the use of O-TOWN as a nickname for Orlando, *id.*, including 19 articles that appeared either in the ORLANDO SENTINEL newspaper or in other Florida newspapers, and others that appeared in the WASHINGTON TIMES, the WASHINGTON POST, the HOUSTON CHRONICLE, the NEW YORK DAILY NEWS, the ATLANTA JOURNAL CONSTITUTION, the CHICAGO TRIBUNE, the BERGEN COUNTY RECORD, and other publications. *Id.* at 1542-43. The Examining Attorney also submitted pages from two websites that showed the use of O-TOWN as a nickname for Orlando. *Id.* at 1543. On that record, the Board found that "O-TOWN is a relatively obscure geographic reference for the city of Orlando, Florida" because

"[a]lthough people in Orlando and parts of Florida may be aware of the nickname, we cannot say . . . that consumers elsewhere in the country are aware that O-TOWN is another name for the city of Orlando." *Id.* The Board concluded that "the limited number of articles reflecting that O-TOWN is a nickname for Orlando is not sufficient for us to conclude that O-TOWN is anything but an obscure geographic term." *Id.*

As discussed below, the evidence that "BA" refers to Broken Arrow, Oklahoma is quantitatively more extensive than the evidence in *Trans Cont'l Records* regarding the meaning of O-TOWN, but it is no better qualitatively. Searches on the websites at abbreviations.com and acronyms.freedictionary.com show that "BA" has a handful of geographic-related meanings, but most are obscure, and none pertain to Broken Arrow, Oklahoma.[3] Accordingly, unlike the term O-TOWN, which referred on its face to a "town," a geographic place, the letters "BA" in the applied-for mark have no obvious, generally known geographic significance, much less as a known abbreviation for Broken Arrow, Oklahoma.

Examining attorneys are advised that "[w]hen it is not clear on its face that the primary significance of the mark is that of a geographic location, the record must include substantial evidence to support a conclusion that the mark identifies a place 'known generally to the relevant American public.'" TRADEMARK MANUAL OF

---

[3] September 4, 2017 Response to Office Action at 18-20. These include Buenos Aires, the (San Francisco) Bay Area, the city Bahia in Brazil, the top-level domain name for Bosnia and Herzegovina, and the city Bratislava in Slovakia. "BA" is also an abbreviation or initialism for numerous non-geographic words and phrases, including the academic degree "Bachelor of Arts," the airline "British Airways," the chemical element "barium," the term "business administration," and the baseball statistic "batting average," to name just a few. *Id.* at 10-20.

EXAMINING PROCEDURE ("TMEP") Section 1210.02(b) (Oct. 2018) (quoting *Newbridge Cutlery*, 113 USPQ2d at 1450). The Examining Attorney made of record more than 50 different websites, articles, search results, and social media pages in which the letters BA are used to abbreviate Broken Arrow, Oklahoma.[4] The websites in the record relate to a wide variety of businesses, professionals, schools, churches, and media, all of which are located in and around Broken Arrow, while the articles appeared in the publications THE DAILY OKLAHOMAN, TULSA WORLD,[5] BROKEN ARROW WORLD, THE CHRISTIAN SCIENCE MONITOR, and THE DALLAS MORNING NEWS, on the websites of Fox 23 News and the NBC affiliate in Tulsa, and on the website of the Broken Arrow city government. In many of these materials, the letters "BA" are used as shorthand for "Broken Arrow."[6] We reproduce below the pertinent portions of a representative sample of the materials in the record (all emphasis has been supplied by the Examining Attorney):

---

[4] March 14, 2017 Office Action at 2-10; September 20, 2017 Final Office Action at 2-16, 18, 38-40, 47-50, 52-53; April 3, 2018 Denial of Request for Reconsideration at 5-23, 25-35.

[5] The record shows that Broken Arrow is a suburb of Tulsa, Oklahoma. *See, e.g.*, April 3, 2018 Denial of Request for Reconsideration at 2, 24.

[6] Two examples reflecting such use are an article from THE DALLAS MORNING NEWS about high school football in Texas and Oklahoma, April 3, 2018 Denial of Request for Reconsideration at 28-30, and the page on the website of Northeastern State University regarding the university's Broken Arrow campus. September 20, 2017 Office Action at 14.





---

[7] March 14, 2017 Office Action at 2.

[8] *Id.* at 5.





---

[9] March 14, 2017 Office Action at 8.

[10] September 20, 2017 Final Office Action at 5.







---

[11] September 20, 2017 Final Office Action at 16.

[12] *Id*. at 39.

[13] April 3, 2018 Denial of Request for Reconsideration at 7.



To paraphrase the book TULSA'S HAUNTED MEMORIES,[15] the record strongly suggests that "most locals" refer to Broken Arrow as "BA." That is hardly surprising; indeed, we have previously recognized that it is a common practice to refer to cities by a shorthand or abbreviation. *See Trans Cont'l Records*, 62 USPQ2d at 1543-44; *In re Cox Enters. Inc.*, 82 USPQ2d 1040, 1042-43 (TTAB 2007) (finding that the term THE ATL "would be recognized by Atlanta residents and visitors to the city as a

---

[14] April 3, 2018 Denial of Request for Reconsideration at 20.

[15] September 20, 2017 Final Office Action at 18.

nickname for Atlanta" where there was "no evidence of record that THE ATL has another meaning or would be perceived as anything other than a reference to Atlanta," and holding that the applied-for mark THEATL was thus merely descriptive of printed materials featuring matters "of interest to residents of and tourists and visitors to Atlanta, Georgia"); *In re Narada Prods. Inc.*, 57 USPQ2d 1801, 1806 (TTAB 2001) (letters "L.A." in applied-for mark CUBA L.A. would be understood to refer to Los Angeles, California).

The relevant issue, however, is not whether "locals" in and around Broken Arrow, Oklahoma recognize "BA" in the applied-for mark BA BEEF as an abbreviation for the city, but rather whether beef consumers throughout the entire United States would understand that "BA" in the mark relates to a geographic place. *See Trans Cont'l Records*, 62 USPQ2d at 1544 (citing *ConAgra Inc. v. Saavedra*, 4 USPQ2d 1245, 1249 (TTAB 1987), in which the Board found the record "inadequate to show that a significant portion of consumers purchasing meatless hot sauce would, upon seeing TAPATIO on a container of meatless hot sauce, conclude that it relates to a place name and that the product came from that place"); *cf. Cox Enters.*, 82 USPQ2d at 1043 n.2 (distinguishing *Trans Cont'l Records* on the ground that because "applicant's goods are directed to a particular segment of the general public, consumers in Atlanta," the understanding of THEATL on the part of consumers elsewhere in the United States was irrelevant).

Here, Applicant's goods are directed to the general public, not just to consumers in Broken Arrow, Oklahoma. Even assuming that "'BA' is likely a well-known

geographic term to the more than 1 million people in the Tulsa metropolitan area," as the Examining Attorney claims, 15 TTABVUE 13, and that the articles in the non-Oklahoma publications have exposed the abbreviation BA to some beef consumers outside Oklahoma,[16] we cannot find, based on the entire record, that the letters BA in the applied-for mark BA BEEF identify "a place known generally to the relevant American public." *Newbridge Cutlery*, 113 USPQ2d at 1450. We agree with Applicant that BA "is no NYC, LA, or even ATL," 13 TTABVUE 13, particularly against the backdrop of the multiple non-geographic meanings of "BA," and we cannot find on this record that "BA" in the applied-for mark is anything other than "a relatively obscure term which would not be perceived as a geographic reference to" Broken Arrow, Oklahoma by beef consumers outside Broken Arrow. *Trans Cont'l Records*, 62 USPQ2d at 1544.

Because the record does not establish the threshold element of geographic descriptiveness, we need not and do not reach the other elements. *Newbridge Cutlery*, 113 USPQ2d at 1451; *Trans Cont'l Records*, 62 USPQ2d at 1544.

**Decision**: The refusal to register is reversed.

---

[16] Wikipedia pages discussing THE DALLAS MORNING NEWS and THE CHRISTIAN SCIENCE MONITOR state that THE DALLAS MORNING NEWS has one of the 20 largest paid circulations in the United States, but that the circulation of THE CHRISTIAN SCIENCE MONITOR is more modest. April 3, 2018 Denial of Request for Reconsideration at 39, 41.