THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: June 6, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Princeton Equity Group LLC*

———

Serial No. 97397212

———

Robert W. Clarida, of Reitler Kailas & Rosenblatt, LLP,
   for Princeton Equity Group LLC.

Marc Leipzig, Trademark Examining Attorney, Law Office 115,
   Daniel Brody, Managing Attorney.

———

Before English, Allard, and Casagrande, Administrative Trademark Judges.

Opinion by Casagrande, Administrative Trademark Judge:

Princeton Equity Group LLC ("Applicant") applied to register the mark PRINCETON EQUITY GROUP (standard characters) on the Principal Register for services identified as "financial services, namely, strategic financial advisory services; providing equity capital for others," in International Class 36.[1] The Trademark Examining Attorney finally refused registration for two independent

---

[1] Applicant filed Application Ser. No. 97397212 on May 5, 2022, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's averment that it has a bona fide intention to use the mark in commerce.

reasons. First, registration was refused under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2), because the mark is primarily geographically descriptive of Applicant's services.[2] Second, registration was refused under Section 2(d), 15 U.S.C. § 1052(d), due to likelihood of confusion with the previously-registered mark PRINCETON ENTREPRENEURIAL HUB (standard characters) for services that include "[p]roviding incubation support, namely, financial and monetary support for start-up ventures," in International Class 36.[3]

After the Examining Attorney made the refusals final,[4] Applicant appealed[5] and requested reconsideration.[6] The Board suspended the appeal and remanded to the Examining Attorney to consider the reconsideration request.[7] After the Examining Attorney denied reconsideration as to the two refusals mentioned above,[8] the appeal

---

[2] *See* Feb. 12, 2024, Final Office Action, at TSDR 2-4. Citations in this opinion to the application record refer to the version of the record downloaded in .pdf format from the Trademark Status and Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

[3] Reg. No. 5877524 issued on October 8, 2019, on the Principal Register. "ENTREPRENEURIAL HUB" is disclaimed and the registration reflects a Section 2(f) acquired distinctiveness claim as to PRINCETON.

[4] *See* Feb. 12, 2024, Final Office Action.

[5] *See* 1 TTABVUE. References to the briefs and appeal record cite to the Board's TTABVUE electronic docket system. The number preceding "TTABVUE" represents the docket number assigned to the cited filing in TTABVUE and any number immediately following "TTABVUE" identifies the specifically-cited page(s), if any.

[6] *See* Aug. 12, 2024, Request for Reconsideration.

[7] *See* 2 TTABVUE.

[8] *See* 4 TTABVUE. The Final Office Action also contained a second Section 2(d) refusal based on another registered mark owned by a different registrant, but the Examining Attorney later withdrew this refusal in view of a consent agreement between Applicant and the owner of the registration. *See* 4 TTABVUE 1.

resumed.[9] Applicant filed a brief,[10] as did the Examining Attorney.[11] For the reasons explained below, we affirm the refusal to register under Section 2(e)(2). We do not reach the Section 2(d) refusal. *See, e.g.*, *In re Mueller Sports Med., Inc.*, No. 87209946, 2018 WL 2277503, at \*7 (TTAB 2018) ("Having found that Applicant's mark is merely descriptive of a feature or characteristic of the goods, we need not reach the alternative ground for refusal that Applicant's mark is deceptively misdescriptive.").[12]

## I.  Section 2(e)(2) refusal

The Examining Attorney refused registration under Section 2(e)(2), finding that Applicant's mark is primarily geographically descriptive of Applicant's services. Applicant's appeal brief says little about this refusal. Notably, the brief does not address its legal or evidentiary basis. The one argument Applicant's brief advances under the header "2(e)(2) Refusal" is that it is "common" for the USPTO to allow businesses in the financial field "to use geographic terms" in their marks, citing three

---

[9]   *See* 5 TTABVUE.

[10]  *See* 6 TTABVUE.

[11]  *See* 8 TTABVUE.

[12]  We note that the Board is undertaking an internal pilot program looking at broadening acceptable forms of legal citation in Board cases. The opinion in the current case is issued as part of that pilot program. Decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals are cited only by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). Westlaw (WL) citations are used for Board decisions. Unless expressly noted, only precedential Board decisions will be cited. Serial or proceeding numbers are provided where available to assist finding cited Board opinions in USPTO and other databases. This opinion thus conforms to the practice set forth in the TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03 (2024).

registrations with the term ASPEN—not PRINCETON—in the marks.[13] This third-party registration evidence does not address the merits of this Section 2(e)(2) refusal, but rather appears to urge consistency in examination generally. The USPTO, including the Board, however, "must decide each case on its own merits … [e]ven if some prior registrations had some characteristics similar to" Applicant's application. *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001) (citation omitted); *see also In re Boulevard Ent., Inc.*, 334 F.3d 1336, 1343 (Fed. Cir. 2003) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases."). Pointing to a few other registrations does nothing to show that the Section 2(e)(2) refusal in this case was improper.

The only remark Applicant directs specifically at this refusal is to state that Applicant "repeats and restates the arguments and evidence set forth in" its June 2023 response to the Nonfinal Office Action and its August 2024 request for reconsideration.[14] As we explain next, this is an insufficient presentation of whatever arguments Applicant may have contemplated.

Section 1203.02(g) of the TBMP warns applicants who institute ex parte appeal proceedings at the Board as follows: "If an applicant, in its appeal brief, does not

---

[13]   6 TTABVUE 6. One of the three, Reg. No. 4857061 for ASPEN ASSET MANAGEMENT, is on the Supplemental Register and disclaims "Asset Management," indicating that the Office treated ASPEN in the mark as geographically descriptive.

[14]   *See id.*

assert an argument made during prosecution, it may be deemed waived by the Board." While the TBMP does not have the force of law, it performs the important function of providing parties appearing before the Board and their counsel with basic information about how the Board conducts its appeal and trial proceedings and what is expected of participants in those proceedings. *See* TBMP (Introduction).

The concept of waiver and forfeiture is a topic about which both the Federal Circuit and the Board have authoritatively spoken.[15] For example, the Board has held that, when a refusal is based on more than one substantive ground or requirement and, on appeal, the applicant's brief fails to address one of them, we may dismiss the entire appeal. *See, e.g.*, *In re Rainier Enters., LLC*, No. 87384516, 2019 WL 6525198, at *2-3 (TTAB 2019). The Federal Circuit's waiver/forfeiture decisions have put a finer point on what constitutes a failure to address an argument. In particular, the Court in *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006) approvingly quoted *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001), for the proposition that arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." 439 F.3d at 1320. More recently, in *In re Killian*, 45 F.4th 1373 (Fed. Cir. 2022), the court said that "failing to present anything more than a conclusory, skeletal argument" on an issue of patentability will result in forfeiture. *Id.* at 1385-86.

---

[15] The terms "waiver" and "forfeiture" are sometimes used interchangeably, but are technically distinct. Waiver is an intentional relinquishment of a right or argument. Forfeiture lacks the intentionality element. It is inferred solely from a party's conduct in failing to timely assert a right or argument. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). The question here is one of forfeiture.

Applicant's statement that it "repeats and restates the arguments and evidence set forth in" various prosecution filings falls short of even setting forth a "conclusory, skeletal" substantive argument, nor does it advert to any particular issue "in a perfunctory manner," let alone display "some effort at developed argumentation." On its face, Applicant's statement tells us nothing about what arguments it may be contemplating by such a statement, leaving us to rummage through the prosecution filings to try to identify, extract, articulate, and address whatever we think that may be. That is problematic for several reasons, one being that arguments for and against registrability often shift or narrow during the course of examination—and did in fact narrow in this case.[16] It also shifts the expenditure of resources from an applicant to the Board. And, further, sanctioning such incorporation-by-reference statements in appeal briefs might well encourage circumvention of our rule setting a 25-page limit on appeal briefs unless prior Board authorization is obtained. *See* Trademark Rule 2.142(b), 37 C.F.R. § 2.142(b).

In short, we find that Applicant's appeal brief fails to address the evidentiary or legal basis for the Section 2(e)(2) refusal, notwithstanding its statement that it "repeats and restates the arguments and evidence set forth in" certain prosecution filings. As a consequence, we could deem Applicant to have forfeited any objection to this refusal.

But because we have not previously held, in a precedential opinion, that such incorporation-by-reference statements are inadequate to present on appeal whatever

---

[16]  *See* n.8 *supra.*

arguments an applicant may thereby be contemplating, we will attempt in this case to identify and address the argument(s) to which Applicant refers. Hereafter, however, we will not do so. Parties whose briefs purport to incorporate by reference arguments made during prosecution will be held to have failed thereby to present whatever arguments the incorporation statement purports to cover to the Board and will be deemed to have forfeited them.

To establish that PRINCETON EQUITY GROUP is primarily geographically descriptive of Applicant's services, the Examining Attorney must show that: "(1) the mark sought to be registered is the name of a place known generally to the public, … (2) the public would make a goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place … [and] (3) the source of the goods is the geographic region named in the mark") (citations omitted)). *In re Newbridge Cutlery Co.*, 776 F.3d 854, 860-61 (Fed. Cir. 2015). The goods/place or services/place association is presumed where the geographic location is generally known, the term's geographic significance is its primary significance, and the goods/service originate there. *Id.* at 861.

Here, the Examining Attorney pointed to evidence that Princeton is a well-known town in New Jersey, and that the wording EQUITY GROUP is highly descriptive or generic,[17] such that the primary geographic significance of the wording is not altered. The Examining Attorney also found that Applicant is located in Princeton, New

---

[17]   *See* Feb. 12, 2024 Final Action, at TSDR 3, 9-47.

Jersey, and will provide its services there,[18] which gives rise to the presumption that the public would make a service/place association. Therefore, the Examining Attorney satisfied the three prongs required for the Section 2(e)(2) refusal.

Applicant's brief first refers to its June 2, 2023, Response to Office Action.[19] In that response, we see no argument directed to the Section 2(e)(2) geographic descriptiveness refusal. Rather, it appears that, in that filing, Applicant instead addressed a Section 2(e)(1) mere descriptiveness refusal that the Examining Attorney did not make, arguing only that the mark is suggestive and not merely descriptive. Thus, nothing in that prosecution filing even purports to challenge that the proposed mark is primarily geographically descriptive.

We turn next to the other prosecution filing to which Applicant's incorporation-by-reference statement refers.[20] In its August 12, 2024 Request for Reconsideration, Applicant said two things. First, it referred to its June 2, 2023, Response. But as we just explained, that filing did not address the Section 2(e)(2) refusal. Second, Applicant stated that it is "common" for the USPTO to allow businesses in the financial field "to use geographic terms" in their marks, citing three registrations with the term ASPEN in the marks.[21] Applicant actually repeated this statement in

---

[18]  *See id.* at 3-4.

[19]  *See* 6 TTABVUE 6.

[20]  *See id.* (referring to Aug. 12, 2024, "Response" (*sic*, should be "Request for Reconsideration").

[21]  *See* Aug. 12, 2024, Request for Reconsideration, at TSDR 5.

its appeal brief. As we also noted above, however, this argument does not address the evidentiary or legal basis of the Section 2(e)(2) refusal.

In sum, even if we were to overlook that Applicant's appeal brief presented no arguments against the evidentiary or legal basis of the Section 2(e)(2) refusal, nothing in the two prosecution filings to which Applicant's incorporation-by-reference statement refers sets forth any basis to hold otherwise. Based on the evidence of record, we find that PRINCETON EQUITY GROUP is primarily geographically descriptive.

We therefore affirm the Section 2(e)(2) refusal.

Our affirmance of the Section 2(e)(2) refusal means that the application stands refused irrespective of whether the Section 2(d) refusal is affirmed. We therefore do not reach the Section 2(d) refusal. *See, e.g.*, *In re Carlton Cellars, LLC*, No. 87438793, 2020 WL 1227591, at *6 (TTAB 2020); *Mueller Sports Med.*, 2018 WL 2277503, at *7.

**Decision**: We affirm the refusal to register Applicant's mark.